E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
RYAN C. CHAPMAN (Cal. Bar No. 318595)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2471
Facsimile: (213) 894-7819
E-mail: Ryan.Chapman@usdoj.gov

Attorneys for Movant
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

VERONICA PAZ AGUILAR et al.,

Plaintiffs,

v.

CATHERINE L. JACOBS et al.,

Defendants.

No. 2:24-cv-08715 MRA (MARx)

**THE UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Declaration of Ryan C. Chapman and [Proposed] Order filed concurrently herewith]*

Hearing Date: January 6, 2025
Hearing Time: 1:30 p.m.
Ctrm: 10B

Honorable Mónica Ramírez Almadani
United States District Judge

# TABLE OF CONTENTS


DESCRIPTION — PAGE

TABLE OF AUTHORITIES .......... i

NOTICE OF MOTION AND MOTION TO REMAND .......... v

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. STATUTORY AND REGULATORY FRAMEWORK .......... 2

III. FACTUAL AND PROCEDURAL BACKGROUND .......... 4

IV. LEGAL STANDARD .......... 6

V. ARGUMENT .......... 6

- A. Remand is required because 42 U.S.C. § 233 does not permit a health center to remove an action after the United States has appeared. .......... 6
- B. The attempted removal under 28 U.S.C. § 1442 is untimely. .......... 9
- C. Even if removal under § 1442 was timely, the Eisner Defendants are not federal officers nor were they acting under officers. .......... 10
  - 1. The Eisner Defendants are not federal officers under § 1442. .......... 10
  - 2. The Eisner Defendants were not acting under the direction of a federal officer. .......... 11
- D. If the Court concludes that remand is not warranted at this time, this action should be stayed pending a determination of whether the Eisner Defendants were acting as deemed federal employees. .......... 15

VI. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

DESCRIPTION

**Federal Cases** **Page(s)**

*Abrego Abrego v. The Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) ........ 6

*Agyin v. Razmzan*,
986 F.3d 168 (2d Cir. 2021) ........ 14-15, 15

*Allen v. Christenberry*,
327 F.3d 1290 (11th Cir. 2003) ........ 7, 8

*Babbitt v. Dignity Health*,
2018 WL 6040472 (C.D. Cal. Nov. 19, 2018) ........ 7

*Barnes v. Sea Mar Cmty. Health Ctrs.*,
2022 WL 1541927 (W.D. Wash. Apr. 27, 2022) ........ 8

*Blumberger v. Tilley*,
115 F.4th 1113 (9th Cir. 2024) ........ 8, 9, 10

*Buljic v. Tyson Foods, Inc.*,
22 F.4th 730 (8th Cir. 2021) ........ 14

*City & County. of Honolulu v. Sunoco LP*,
39 F.4th 1101 (9th Cir. 2022) ........ 6, 12

*County of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) ........ 10-11, 11, 14

*Doe v. Cedars-Sinai Health Sys.*,
106 F.4th 907 (9th Cir. 2024) ........ 12-13, 14, 15

*Doe v. Centerville Clinics Inc.*,
2024 WL 3666164 (3d Cir. Aug. 6, 2024) ........ 7

*Douglass v. Weyerhaeuser Co.*,
662 F. Supp. 147 (C.D. Cal. 1987) ........ 9

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) .......... 6

*Fidelitad, Inc. v. Insitu, Inc.*,
904 F.3d 1095 (9th Cir. 2018) .......... 11

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) (per curiam) .......... 6

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
761 F.3d 1027 (9th Cir. 2014) .......... 6

*Henderson v. Bluemink*,
511 F.2d 399 (D.C. Cir. 1974) .......... 2

*K.C. v. Cal. Hosp. Med. Ctr.*,
2018 WL 5906057 (C.D. Cal. Nov. 8, 2018) .......... 11

*Lehman v. Nakshian*,
453 U.S. 156 (1981) .......... 2

*Mesa v. California*,
489 U.S. 121 (1989) .......... 14

*N.G. v. Downey Reg'l Med. Ctr.*,
140 F. Supp. 3d 1036 (C.D. Cal. 2015) .......... 13

*Oh v. Dignity Cmty. Care*,
2023 U.S. Dist. LEXIS 192891 (C.D. Cal. Oct. 25, 2023) .......... 15

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016) .......... 15

*Q. v. California Hosp. Med. Ctr.*,
2018 WL 1136568 (C.D. Cal. Mar. 1, 2018) .......... 7

*Ruppel v. CBS Corp.*,
701 F.3d 1176 (7th Cir. 2012) .......... 15

*Saldana v. Glenhaven Healthcare LLC*,
27 F.4th 679 (9th Cir. 2022) .......... 13

*Samish Indian Nation v. United States*,
90 Fed. Cl. 122 (2009) .......... 2
*Shamrock Oil & Gas Corp. v. Sheets*,
313 U.S. 100 (1941) .......... 6
*Sherman v. Dignity Health*,
2019 WL 2242071 (C.D. Cal. May 23, 2019) .......... 12
*Sherman v. Sinha*,
843 F. App'x 870 (9th Cir. 2021) .......... 8
*Sturgeon v. Frost*,
587 U.S. 28 (2019) .......... 3, 11
*United Servs. Auto. Ass'n v. United States*,
105 F.3d 185 (4th Cir. 1997) .......... 7
*United States v. Nordic Vill., Inc.*,
503 U.S. 30 (1992) .......... 2
*United States v. Orleans*,
425 U.S. 807 (1976) .......... 12
*United States v. Testan*,
424 U.S. 392 (1976) .......... 2
*Watson v. Philip Morris Companies, Inc.*,
551 U.S. 142 (2007) .......... 12, 13, 14, 15

**Federal Statutes**

28 U.S.C. §§ 1346, 2671 .......... 2
28 U.S.C. § 1442 .......... 1, 9, 10, 12, 15
28 U.S.C. § 1442(a)(1) .......... 6, 10, 11
28 U.S.C. § 1446(b)(1) .......... 9
28 U.S.C. § 1446(b)(3) .......... 9
28 U.S.C. § 1446(b)(10) .......... 9
28 U.S.C. § 1447(c) .......... v

28 U.S.C. § 1447(d) ........................................ 15
28 U.S.C. § 2679(b)(1) (1988) ........................................ 3
42 U.S.C. § 233 ........................................ 2, 3, 5, 6, 16
42 U.S.C. § 233(a) ........................................ 3, 8, 16
42 U.S.C. § 233(b) ........................................ 5
42 U.S.C. § 233(c) ........................................ 4, 8, 16
42 U.S.C. § 233(g) ........................................ 3, 11, 12
42 U.S.C. § 233(g)-(n) ........................................ 1, 3
42 U.S.C. § 233(g)(1)(A), (B), (D), (E), (F) ........................................ 11
42 U.S.C. §§ 233(g)(1)(A)-(D), (h) ........................................ 4
42 U.S.C. § 233(g)(1)(B)-(C) ........................................ 4
42 U.S.C. § 233(g)(1)(F) ........................................ 3
42 U.S.C. § 233(l) ........................................ 1
42 U.S.C. § 233(l)(1) ........................................ 4, 5, 7
42 U.S.C. § 233(l)(2) ........................................ 4, 7, 16
42 U.S.C. § 254b(a)(1) ........................................ 13
42 U.S.C. § 254b(e)(1)(A) ........................................ 2
Pub. Law No. 104-73, §§ 2–11 ........................................ 3
Pub. Law No. 102-501, 106 Stat 3268 (1992) ........................................ 14

**Other**

28 C.F.R. § 15.2(b) ........................................ 5
H.R. Rep. 102-823 (1992), *reprinted in* 1992 U.S.C.C.A.N. 2627 ........................................ 2, 3, 12
H.R. Rep. No. 91-935, at 3, 91st Cong., 2d sess. (March 23, 1970) ........................................ 3

# NOTICE OF MOTION AND MOTION TO REMAND

PLEASE TAKE NOTICE that, on January 6, 2025 at 1:30 p.m., as soon thereafter as they may be heard, the United States of America will, and hereby does, move this Court for an order remanding this case to California Superior Court pursuant to 28 U.S.C. § 1447(c). This motion will be made in the First Street Federal Courthouse before the Honorable Mónica Ramírez Almadani, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

The United States brings the motion on the ground that there was no valid statutory basis for the Eisner Defendants to remove this case from California Superior Court.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on October 28, 2024.

Dated: November 5, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney

Attorneys for Movant
United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n), establishes a statutory framework for the federal government to assist grant-recipient community health centers with the cost of medical malpractice insurance as they carry out their business of providing health care services to underserved communities. Under FSHCAA, community health centers can apply to the Department of Health and Human Services ("HHS") to be "deemed" an employee of the Public Health Service ("PHS") for the limited purpose of § 233. If that health center or its covered employee is sued, the government determines whether the alleged conduct falls within the scope of the federal employment and is covered under FSHCAA. If the government determines that the allegations are covered, the United States will defend the action—as though the health center were a federal employee of the PHS.

Plaintiffs filed this medical malpractice lawsuit alleging claims arising from the stillbirth of Veronica Aguilar's child. Defendants Catherine Jacobs, Certified Nurse Midwife ("CNM") and Kendra Segura, MD, were employees of Defendant Eisner Health (collectively "the Eisner Defendants"), and provided medical care to Aguilar while she was an inpatient at California Hospital Medical Center ("the Hospital"), a hospital operated by Dignity Community Care. The U.S. Attorney appeared in the state court action on April 17, 2024, and notified the state court that the Eisner Defendants were not deemed to be PHS employees for the purposes of this lawsuit. Six months later, to the Government's surprise, the Eisner Defendants unliterally removed this action to federal court claiming that they are deemed federal employees for the purposes of this lawsuit.

This case must be remanded to state court. Section 233(*l*) only allows a defendant to unilaterally remove a state court action if the Attorney General *failed to appear* in the state court action—it does not allow for removal if the Attorney General has appeared. Nor does § 1442 apply. In addition to the removal being untimely, Eisner and its employees are not federal officers nor are they "acting under" a federal officer simply by

virtue of receiving a federal grant. In light of these statutory defects, the Court should remand this case back to the Superior Court.

## II. STATUTORY AND REGULATORY FRAMEWORK

The United States, as a sovereign entity, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define the Court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq.,* represents a limited waiver of federal sovereign immunity, under which, subject to certain exceptions, the United States may be held liable for the tortious conduct of its employees to the same extent as a private party. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992).

The federal government provides grants to public and private nonprofit entities to defray "the costs of the operation of public and nonprofit private health centers that provide health services to medically underserved populations." 42 U.S.C. § 254b(e)(1)(A).[1] Before 1992, health centers used their own funds, including grant money, to purchase medical malpractice insurance. H.R. Rep. 102-823, at 5 (1992), *reprinted in* 1992 U.S.C.C.A.N. 2627. To help ease this burden and to preserve grant money for patient care, Congress passed FSHCAA. *See id.* at 6 ("Extending FTCA coverage to grantees . . . will enable them to redirect funds now spent on medical malpractice insurance premiums[.]"). This act was grafted onto an earlier statute enacted in 1970 immunizing United States PHS employees from medical malpractice.[2] Subject

---

[1] A federal grant is "financial assistance authorized by federal law to support autonomous programs of states or local governments or groups, which the federal government does not dictate but does wish to encourage. . . . Grants are characterized by a 'maximum of autonomy in the program essentials, coupled with a necessary minimum of fiscal control to assure integrity.'" *See Samish Indian Nation v. United States*, 90 Fed. Cl. 122, 131 (2009) (citations omitted), *aff'd in part, rev'd on other grounds*, 657 F.2d 1330 (Fed. Cir. 2011), *cert. granted, judgment vacated in part*, 568 U.S. 936 (2012).

[2] The Surgeon General asked Congress to enact this statutory immunity because PHS officers and employees could not afford to purchase medical malpractice insurance, and the risk that federal common-law official immunity afforded no protection against

*(footnote cont'd on next page)*

to statutory conditions and limitations, FSHCAA made the remedy of the FTCA against the United States exclusive for certain medical malpractice suits. H.R. Rep. 102-823, at 4–6 (1992). Following a three-year demonstration period, Congress amended FSHCAA to clarify the scope of malpractice protections afforded under the statute and to make FSHCAA's malpractice protections optional for qualifying grantees. *See* Pub. Law No. 104-73, §§ 2–11, *codified as amended at* 42 U.S.C. § 233(g)-(n).

Should a health center decide to seek eligibility for FSHCAA's optional protections, it must apply to the Secretary of HHS, meet certain requirements, and obtain annual approval from the Secretary. 42 U.S.C. §§ 233(g)(1)(A)-(D), (h). If the health center is approved, the Secretary "deems" the health center and its providers to be employees of the PHS for the upcoming calendar year, but only "with respect to services provided" to its patients and certain non-patients in specified pre-approved circumstances, and only "[f]or purposes of" 42 U.S.C. § 233. 42 U.S.C. § 233(g)(1)(A), (B)-(C).[3] This yearly deeming action is binding upon HHS, the Attorney General, and any parties to a civil proceeding. *Id.* § 233(g)(1)(F).

In turn, § 233(a) provides that a claim against the United States under the FTCA is the exclusive remedy for certain lawsuits against PHS employees. *See id.* § 233(a); H.R. Rep. 102-823, at 4 (1992). The fact that a health center and its employees are deemed for a particular calendar year does not mean that they are covered for a particular

---

medical malpractice claims. 116 Cong. Rec. 42,543 (1970); *see* H.R. Rep. No. 91-935, at 3, 91st Cong., 2d sess. (March 23, 1970) (recommending private bill to compensate a PHS physician for settling a malpractice claim due to the risk that any official immunity defense would be reversed on appeal); *see also Henderson v. Bluemink*, 511 F.2d 399, 402–03 (D.C. Cir. 1974) (rejecting official immunity defense for physicians charged with malpractice). FSHCAA, by "deeming" qualifying entities and individuals to be PHS employees only for "purpose of [section 233]" incorporates only the immunity afforded under 42 U.S.C. § 233(a), not the broader immunity conferred under the later-enacted Westfall Act, 28 U.S.C. § 2679(b)(1) (1988).

[3] As the Supreme Court has explained, the word "deemed" is utilized in statutes for the limited purpose of establishing a "useful" "legal fiction." *Sturgeon v. Frost*, 587 U.S. 28, 47 (2019). Thus, "deemed" health centers are provided the same immunity applicable to PHS employees, but only within the confines of § 233 and to the extent the alleged conduct is within the scope of the deeming.

lawsuit. Among other things, the scope of the deeming is limited by statute, and the government must make a case-specific determination regarding whether FTCA coverage is available for a particular suit. *See, e.g.*, 42 U.S.C. § 233(g)(1)(B)-(C).

If a health center or its providers are sued in state court, FSHCAA provides two ways for a state court action to be removed. First, the Attorney General may at "any time before trial" certify that a health center defendant was within the scope of its employment and accordingly entitled to FTCA coverage, which results in removal of the action to federal court by the Attorney General, followed by the substitution of the United States. 42 U.S.C. § 233(c).

Second, § 233(*l*)(1) provides that "the Attorney General, within 15 days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h), that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." Only if the Attorney General or his designee "fails to appear in State court within the time period prescribed under paragraph (1)" may a health center defendant remove the case to federal court on its own, where proceedings are then stayed pending a determination and order on the appropriate forum for the plaintiff's claims for damages to proceed. *Id.* § 233(*l*)(2).

## III. FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Aguilar presented to the Hospital on January 20, 2022, for treatment relating to her pregnancy. Compl. ¶ 13. She alleged that Defendants negligently discharged her without completing appropriate testing and without urgently delivering her baby on that date. *Id.* Aguilar delivered a stillborn child three days later. *Id.* According to the Eisner Defendants' state court filings, Jacobs and Dr. Segura were staffing the Hospital's OB/GYN Department at the time of this care, pursuant to an independent contractor agreement between Eisner and the Hospital, in which Eisner

agreed to staff the Hospital's OB/GYN Department and utilize its own employees to work at the Hospital and treat the Hospital's patients. *See* ECF No. 1-2 at 10-11, 25-69.

Plaintiffs filed this action in California Superior Court on January 19, 2023. ECF No. 1-1. Eisner was served with the summons and complaint on March 29, 2023, and Dr. Segura was served on March 22, 2023. ECF No. 1 at 21-26. While the state court docket does not reflect when Jacobs was served, the Eisner Defendants collectively, including Jacobs, filed a motion for certification and substitution of the United States in state court on July 5, 2023. ECF No. 1-2. HHS became aware of this action the following day after receiving notice from Plaintiffs.[4] On July 19, United States filed a notice pursuant to 42 U.S.C. § 233(*l*)(1) stating that "whether [the Eisner Defendants] are 'deemed' to be 'employee[s] of the Public Health Service' for purposes of 42 U.S.C. § 233, with respect to the actions or omissions that are the subject of this civil action, is under consideration." Chapman Decl. ¶ 4 & Ex. B. On November 15, 2023, the state court denied the Eisner Defendants' motion. ECF No.1 at 184-92.

During this time, the government conducted an investigation into whether the Eisner Defendants were deemed employees for the purpose of this lawsuit. *See Federal Tort Claims Act: Health Center Policy Manual* 21-22 (noting minimally required documentation a health center must provide to HHS upon request). On April 17, 2024, the United States Attorney's Office notified the Eisner Defendants' counsel by letter that their request for FTCA coverage was denied. Chapman Decl. ¶ 5 & Ex. C. That same day, the United States filed an amended notice in state court, stating the same. *Id.* ¶ 6 & Ex. D. Six months later, on October 9, 2024, the Eisner Defendants removed this action to federal court. ECF No. 1. Again, the government received notice only by Plaintiffs.

[4] A deemed entity is required to provide immediate notice of a lawsuit to HHS after that entity has been served. 42 U.S.C. § 233(b); 28 C.F.R. § 15.2(b); *accord* Health Res. & Servs. Admin., HHS, *Federal Tort Claims Act: Health Center Policy Manual* 25, https://bphc.hrsa.gov/sites/default/files/bphc/technical-assistance/ftcahc-policy-manual.pdf (last updated July 21, 2014). The Eisner Defendants did not do so here—HHS was instead notified of this action when *Plaintiffs* notified the agency of the July 5 motion. Declaration of Ryan C. Chapman ("Chapman Decl.") ¶ 3 & Ex. A.

Chapman Decl. ¶ 7.

## IV. LEGAL STANDARD

Federal courts have long recognized that removal should be "strictly construed" and that a "defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014). This premise stems from principles of federalism and "[d]ue regard for the rightful independence of state governments." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). A defendant "may prefer federal court, but they may not remove their cases to federal court unless federal laws let them." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 705–06 (3d. Cir. 2022). Accordingly, "federal courts must apply a presumption against removal and construe uncertainties against removal to federal court. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

This presumption against removal is softened for federal officer removal under 28 U.S.C. § 1442(a)(1), which requires a more "generous interpretation" in favor of removal. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). Despite this softer standard, federal officer removal remains constrained by the statutory perquisites and courts still "excercis[e] 'prudence and restraint'" in resolving doubts as to the removability of cases. *See City & County. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022) (citation omitted).

## V. ARGUMENT

### A. Remand is required because 42 U.S.C. § 233 does not permit a health center to remove an action after the United States has appeared.

The Eisner Defendants' attempted removal under § 233(*l*) fails because this subsection only allows for removal if the Attorney General *failed to appear* in the state court action within fifteen days after receiving notice of the filing of the state court

action. *See* 42 U.S.C. § 233(*l*)(1) & (2). As described above, § 233(*l*)(1) directs the Attorney General to appear in state court within 15 days of notice of the action. The related provision, § 233(*l*)(2), allows a defendant to remove the action to federal court only "[i]f the Attorney General fails to appear in State court within the time period prescribed under paragraph (1)." In other words, the statute does not give defendants a unilateral removal right, but rather only permits them to remove when the Attorney General has failed to timely appear.

Here, Eisner failed to comply with the statutory and regulatory notice provisions by never notifying HHS of the complaint,[5] but the U.S. Attorney became aware of the Complaint after Plaintiffs notified the agency of the Eisner Defendants' motion for substitution in the state court. *See* Chapman Decl. ¶¶ 3 & 4. The U.S. Attorney, acting as the Attorney General's designee, then appeared in the state court action on July 19, 2023, to advise the state court that coverage was under consideration, and again on April 17, 2024, to advise the state court that coverage was denied. *Id.* Exs. B & D. Accordingly, the Eisner Defendants' removal under § 233(*l*)(2) is facially defective. *See, e.g.*, *Allen v. Christenberry*, 327 F.3d 1290 (11th Cir. 2003); *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164, at *2 (3d Cir. Aug. 6, 2024); *L.D.Q. v. California Hosp. Med. Ctr.*, 2018 WL 1136568, at *1–3 (C.D. Cal. Mar. 1, 2018) ("Section 233(*l*)(2) does not provide a basis for removal because the Attorney General's designee did not 'fail to appear in State court.'"); *Babbitt v. Dignity Health*, 2018 WL 6040472, at * 3 (C.D. Cal. Nov. 19, 2018) ("Under the plain text of Section 233(*l*)(2) removal was improper because the Attorney General did not "fail to appear" within "15 days after being notified" of the state court action."), *aff'd* 2023 WL 1281668 (9th Cir. Jan. 31, 2023).

Courts have repeatedly confirmed that the Attorney General's timely appearance

[5] In comparable cases, failing to strictly comply with the FTCA's procedures results in forfeiture of the FTCA's protections. *Cf. United Servs. Auto. Ass'n v. United States*, 105 F.3d 185, 187 (4th Cir. 1997).

forecloses removal under this section. *Sherman by & through Sherman v. Sinha*, 843 F. App'x 870, 873 (9th Cir. 2021); *accord Allen*, 327 F.3d at 1295 ("The Attorney General did appear through the United States Attorney . . . to give notice that no decision had been made but one was forthcoming. The next day after the Attorney General appeared the defendant doctors themselves removed the case to federal court, something the statute does not permit."); *Barnes v. Sea Mar Cmty. Health Ctrs.*, 2022 WL 1541927, at *3 (W.D. Wash. Apr. 27, 2022) ("The statute does not allow removal when the Attorney General properly appears and informs the court that the United States is still determining whether the defendant is an employee of the Public Health Services."), *R & R adopted*, 2022 WL 1540462 (W.D. Wash. May 16, 2022). Accordingly, the attempted removal here was foreclosed.

Indeed, the Eisner Defendants tacitly concede as much by admitting that the Ninth Circuit's recent decision in *Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024), held that requires the Attorney General was required to execute a removal to federal court in that case. Notice of Removal ("NOR") ¶¶ 31-32. *Blumberger* recently held that the Attorney General's notice in state court must state only "whether the defendant was deemed during the relevant time period and whether the complaint arises out of the performance of services listed in § 233(a)" and, if the answer is yes, the Attorney General removes should remove the action to federal court. *Blumberger*, 115 F.4th at 1130. This case is similarly one that, under the Ninth Circuit's new construction of the statute in *Blumberger*, the government would have been required to remove if the Eisner Defendants had notified the government that the case was still pending. The Solicitor General has not yet determined whether to seek further review in *Blumberger*. And as the Ninth Circuit recognized, the appropriate remedy to enforce the government's removal obligations is a matter of discretion that takes into account case-specific circumstances. *See id.* at 1139-40. By statute, the Attorney General can execute that removal "at any time before trial." § 233(c); *accord Blumberger*, 115 F.4th at 1139. *Blumberger* did not disturb the existing cases holding that a health center's removal is

improper after the Attorney General appeared in state court. *See Blumberger*, 115 F.4th at 1140 (declining to address this issue). Nor do the Eisner Defendants cite any authority that gives a health center the right to remove an action simply because it is displeased with the statutory timeframe for the Attorney General to do so. Accordingly, in light of the improper removal, the Court is without jurisdiction and this case should be remanded. Such a remand order need not address separate issues concerning the government's own removal obligations under the statute.

**B. The attempted removal under 28 U.S.C. § 1442 is untimely.**

For removals under 28 U.S.C. § 1442, a notice of removal must be filed within 30 days of receipt of the complaint. 28 U.S.C. § 1446(b)(1). If the initial pleading is not removable, "a notice of removal may be filed within thirty days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). "If the Defendant does not remove the case upon the first opportunity, the Defendant has waived his right to remove at a later time." *Douglass v. Weyerhaeuser Co.*, 662 F. Supp. 147, 149 (C.D. Cal. 1987).

In the context of health center cases, the Ninth Circuit has clarified that a defendant's subjective awareness of their deemed status is sufficient to start the clock for removal. *See Blumberger*, 115 F.4th at 1122–23. Evidence of when a defendant became aware of HHS's Notice of Deeming for the calendar year demonstrates that awareness. *Id.* at 1123. Accordingly, the Eisner Defendants were required to remove this case within thirty days of their awareness of their deemed status because that paper provided them clear notice of a "colorable federal defense." *See id.*

Here, the Eisner Defendants conclusively demonstrated their awareness when they collectively filed their state court motion on July 5, 2023. That motion readily asserted deemed status on behalf of Eisner, Dr. Segura, and Jacobs. ECF No. 1-2 at 10. That motion also included a copy of the 2022 Notice of Deeming for Eisner and its employees. *Id.* at 121. Accordingly, while the Eisner Defendants may have subjectively

been aware of their deemed status earlier, they demonstrated their awareness no later than July 5, 2023.[6] Pursuant to § 1446(b), the Eisner Defendants removal under 28 U.S.C. § 1442 was untimely because they were required to remove this action no later than August 4, 2023.

The Eisner Defendants try to circumvent their untimely removal by arguing that *Blumberger* constituted a change in the law, thereby rendering their removal timely relative to the Ninth Circuit's decision. NOR ¶ 15. But *Blumberger* made no such sweeping change to § 1446(b). The Ninth Circuit merely clarified that the initial complaint in that case did not make a health center case removable and that clear evidence of the defendant's grounds for removal was required. *Blumberger*, 115 F.4th at 1122. The law remains the same—the Eisner Defendants has thirty days to remove this action after their potential grounds for removal became clear and that time has long since passed.

**C. Even if removal under § 1442 was timely, the Eisner Defendants are not federal officers nor were they acting under officers.**

The Eisner Defendants cannot remove this case to federal court under 28 U.S.C. § 1442(a)(1) and, accordingly, remand is required. Section 1442(a)(1) allows any defendant who is an "officer (or any person acting under that officer) of the United States or of any agency thereof" to remove an action to federal court. The Eisner Defendants fulfill neither of these categories.

1. <u>The Eisner Defendants are not federal officers under § 1442.</u>

The Eisner Defendants' claim that they are federal officers under § 1442 is unsupported. NOR ¶ 10. They are not even federal employees—let alone persons exercising significant authority on behalf of the federal government. *See County of San*

---

[6] Eisner, as the actual deemed entity that submitted the deeming application to HHS, was unquestionably notified of its deemed status before this lawsuit was ever filed. The Notice informing Eisner of its deeming for 2022 is dated July 28, 2021. ECF No. 1-2 at 121. Thus, even assuming Jacobs and Dr. Segura were not aware of their deemed status, which flows from Eisner's application, until July 2023, Eisner itself was aware far earlier.

*Mateo v. Chevron Corp.*, 32 F.4th 733, 756 (9th Cir. 2022) ("When Congress first enacted § 1442(a)(1), the phrase 'officer of the United States' was generally understood as a term of art that referred to federal officers who 'exercis[ed] significant authority.'" (citation omitted)). Instead, Eisner is a federal-grant recipient whose employees can be "deemed" to be PHS employees under FSHCAA. As noted above, the word "deemed" establishes a "useful" "legal fiction." *Sturgeon*, 587 U.S. at 47. That "legal fiction," which is created by § 233(g), is expressly limited to be "[f]or purposes of this section," not for any other section of federal law. *See* § 233(g)(1)(A), (B), (D), (E), (F); *see also K.C. v. Cal. Hosp. Med. Ctr.*, 2018 WL 5906057, at *5 (C.D. Cal. Nov. 8, 2018) ("A state court defendant cannot use its deemed federal status, which is limited to coverage under the FTCA for medical malpractice, for all purposes."). Accordingly, the Eisner Defendants are not federal officers.

2. <u>The Eisner Defendants were not acting under the direction of a federal officer.</u>

The Eisner Defendants also err in claiming that they were "person[s] acting under" an officer of the United States, 28 U.S.C. § 1442(a)(1). The "acting under" language "extend[s]" removal rights "to employees, as well as officers," of the federal government. *San Mateo*, 32 F.4th at 756. A "private person" who is not a federal employee can qualify as someone "acting under" a federal officer if the individual "has certain types of close relationships with the federal government." *Id.* "The paradigm" of such a relationship "is a private person acting under the direction of a federal law enforcement officer." *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018).

The Ninth Circuit has "identified four factors" that bear on "whether a person was 'acting under' a federal officer": "(1) working under an officer in a manner akin to an agency relationship; (2) being subject to the officer's close direction, such as acting under the guidance, or control of the officer or having an unusually close relationship involving detailed regulation, monitoring, or supervision; (3) helping fulfill basic governmental tasks; and (4) conducting activities so closely related to the government's

implementation of its federal duties that the person faces a significant risk of state-court prejudice." *Honolulu*, 39 F.4th at 1107 (cleaned up). Each of these factors cuts against the Eisner Defendants.

As to the first two factors, neither Eisner nor its employees have agency-like or "unusually close" relationships with the government, nor do they act under federal government "subjection, guidance, or control," *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151, 153 (2007) (quotation marks omitted). Eisner may receive grant money from HHS, but it remains a private entity. *United States v. Orleans*, 425 U.S. 807, 816 & n.6 (1976) (noting that "plainly the granting of funds can be conditional without changing the basic relationship between federal and local governments and their components," and "[a]lthough such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs or of state governmental bodies into federal governmental acts"); *Sherman v. Dignity Health*, 2019 WL 2242071, at *2 (C.D. Cal. May 23, 2019) ("A [defendant's] status as an employee of a federal grant recipient is insufficient to establish federal officer or agency jurisdiction."). While Eisner must comply with regulations to remain eligible for grant funding as well as to obtain malpractice coverage under FSHCAA, these requirements do not entitle Eisner to § 1442 removal. *See Watson*, 551 U.S. at 153 (holding that a private firm does not act under federal officers by complying with federal laws, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored").

Indeed, the Eisner Defendants' cursory reliance on legislative history concerning "[f]ederal requirements associated with the grants" gives the lie to their own argument. NOR ¶ 13 (citing to H.R. Rep. No. 102-823 to argue that Eisner is acting under federal control). Grant conditions apply to all federally-supported health centers, *regardless* of whether they have taken the additional, optional, step of applying for deemed status under § 233(g). Thus, the Eisner Defendants' argument would convert *all* health centers to federal employees, regardless of whether they had taken the optional step of applying to become "deemed" employees of the PHS. *Cf. Doe v. Cedars-Sinai Health Sys.*, 106

F.4th 907, 918 (9th Cir. 2024) (accepting incentive payments and federal oversight did not transform healthcare organization's relationship with federal government). Accordingly, these grant conditions do not tip the first two factors in the Eisner Defendants' favor.

As to the third factor, Eisner and its employees do not help fulfill basic governmental tasks. Privately-operated health centers such as Eisner receive grants to assist those centers with providing certain services to "medically underserved" populations. 42 U.S.C. § 254b(a)(1). While the federal government has recognized those services as important, they are not services that, "in the absence" of federal grant funding, "the Government itself would have had to" provide. *Watson*, 551 U.S. at 154; *cf. N.G. v. Downey Reg'l Med. Ctr.*, 140 F. Supp. 3d 1036, 1040 (C.D. Cal. 2015) ("[T]he government is not outsourcing a government task to [the medical center] and overseeing [the medical center's] conduct. Instead, [the medical center] merely collects Medicare, Medicaid, and/or Medi-Cal payments from the government for providing medical treatment to eligible members of the public."). In short, "[i]t cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685 (9th Cir. 2022) (citation omitted).

Instead, it is the government's grant funding that supports health centers' pre-existing efforts to provide services that benefit the public. *See* Elayne J. Heisler, Cong. Rsch. Serv., R43937, Federal Health Centers: An Overview 2 (2017) (explaining that the program "awards grants to *support* outpatient primary care facilities that provide care primarily to low-income individuals" (emphasis added)); *id.* at 8 (explaining that grant recipients "are required to use grant funds to *supplement* and *not supplant* funding that has been available *prior to* the grant" (emphasis added)). Indeed, Eisner existed and operated for over 80 years before it supplemented its funding with a health center grant

from the federal government.[7] The Eisner Defendants cannot plausibly argue that they were carrying out duties for the federal government long before Eisner ever applied for federal assistance.

In other words, the government "assists" or "helps carry out" the work of health centers—not the other way around. That is why it is called the "Federally *Supported* Health Centers *Assistance* Act." Pub. L. No. 102-501, 106 Stat. 3268 (1992) (emphasis added); *see also, e.g.*, *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 740 n.4 (8th Cir. 2021) (rejecting a private company's argument for removal where "the federal government provided *it* assistance, rather than the other way around"); *Cedars-Sinai Health Sys.*, 106 F.4th at 917 ("Cedars-Sinai chose to satisfy the Meaningful Use Program's objectives by building a patient portal using tracking technology. That decision does not mean Cedars-Sinai's My CS-Link is a federal government website, or that it is operated on the government's behalf or for the federal government's benefit.").

As to the fourth factor, the Eisner Defendants do not face "a significant risk of state court prejudice." *County of San Mateo*, 32 F.4th at 757 (quoting *Watson*, 551 U.S. at 152). Congress enacted the federal officer removal statute to address situations in which "state hostility" may have been "specifically directed against federal officers' efforts to carry out their federally mandated duties." *Mesa v. California*, 489 U.S. 121, 139 (1989). In cases filed against health center employees, unless the United States is substituted as a party, the case remains a medical malpractice tort suit under state law that is well within the competence of state courts. The concerns animating federal officer removal are not implicated.

The Eisner Defendants' reliance on *Agyin v. Razmzan*, 986 F.3d 168 (2d Cir.

---

[7] *Our History*, Eisner Health, https://www.eisnerhealth.org/about-us/our-history/ (last visited October 7, 2024) (Eisner Health founded in 1920 under a different name; changed name to Eisner in 2002 after a grant from private donors; awarded first federal grant under FSCHAA in 2004). As of 2020, government grants from all sources comprised only nine percent of Eisner's revenue. *Eisner Health 2020 Annual Report* 12, https://eisnerhealth.org/wp-content/uploads/2024/03/2020-Annual-Report-V18d-1.pdf (last visited Oct. 24, 2024).

2021) is misplaced. *See* NOR ¶ 13. *Agyin* concluded that heath centers were carrying out duties the federal government is required to perform, analogous to federal contractors or employees, but did so without any real analysis of FSHCAA or how a federal grant to a private entity might differ from a federal contract that outsources a core government function. *See* 986 F.3d at 175-77. The only issue the court needed to address was whether the case had been "*removed pursuant to* section 1442." *Id.* at 184 (emphasis added) (quoting 28 U.S.C. § 1447(d)). Any remaining analysis was dicta and inapplicable to this context. *See Oh v. Dignity Cmty. Care*, 2023 U.S. Dist. LEXIS 192891, at *14 n.3 (C.D. Cal. Oct. 25, 2023). As described above, FSHCAA is plainly intended to be a grant program that assists health centers in carrying out their work. *Agyin* did not accurately consider this relationship.

The fact that the federal government is the one assisting health centers also sets FSHCAA apart from many of the cases *Agyin* relied upon. *Agyin* relied heavily on cases involving defense contractors producing military weapons. 986 F.3d at 175 (citing *Watson*, 551 U.S. at 153-54; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012)). But, of course, those cases were contractual relationships involving "a 'delegation of legal authority from a federal entity.'" *Cedars-Sinai Health Sys.*, 106 F.4th at 916. The federal government would have produced weapons for the Army in the absence of those contracts. There is no corresponding obligation to provide health care to underserved communities, regardless of the wisdom of such a policy.

Because the Eisner Defendants are not federal officers, nor were they acting under federal officers, this action should be remanded back to state court.

**D. If the Court concludes that remand is not warranted at this time, this action should be stayed pending a determination of whether the Eisner Defendants were acting as deemed federal employees.**

If the Court denies the United States' motion and concludes that remand is not warranted at this time, the Court should direct the parties to brief the issue of whether the

Eisner Defendants' alleged actions were within their deemed federal employment with the PHS, with the action otherwise stayed pending the Court's determination on that issue. If a district court determines before trial that a case removed under § 233 "is one in which a remedy by suit within the meaning of [§ 233(a)] is not available against the United States, the case shall be remanded to the State Court." 42 U.S.C. § 233(c). To facilitate such a determination, the statute provides that when a health center properly removes an action to federal court, that action "shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) and issues an order consistent with such determination." § 233(*l*)(2).

The government issued a denial decision stating that the Eisner Defendants were not acting within the scope of their employment on April 17, 2024. Chapman Decl. Ex. C. While that decision was correct, briefing on the merits of that decision is appropriate only if the Court denies the present motion. Accordingly, the Court need to address that issue here.

**VI. CONCLUSION**

For the foregoing reasons the United States asks that the Court remand this action to the Superior Court for the County of Los Angeles.

Dated: November 5, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney

Attorneys for Movant
United States of America

## L.R. 11-6.1 Certification

The undersigned counsel of record for the United States certifies that this brief contains 5,764 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 5, 2024

/s/ *Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney