KELLY, TROTTER & FRANZEN
John C. Kelly (SBN 125609)
Kristina A. Hoban (SBN 280023)
111 West Ocean Boulevard, 14th Floor
Post Office Box 22636
Long Beach, California 90801-5636
Telephone No. (562) 432-5855 / Facsimile No. (562) 432-8785
jckelly@kellytrotter.com
kahoban@kellytrotter.com

FELDESMAN LEIFER LLP
Matthew Sidney Freedus (DC 475887)*
Brendan M. Tyler (DC 1672687)*
1129 20th Street NW, 4th Floor
Washington, DC 20036
T. 202.466.8960 / F. 202.293.8103
mfreedus@feldesman.com / btyler@feldesman.com
*Admitted *pro hac vice*

*Counsel for Defendants EISNER HEALTH, KENDRA SEGURA, M.D., and CATHERINE JACOBS, C.N.M.*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| VERONICA PAZ AGUILAR, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CATHERINE L. JACOBS, CNM, et al.,<br><br>Defendants. | CASE NO.: 2:24-CV-08715-MRA-MAR<br><br>**DEFENDANTS EISNER HEALTH, KENDRA SEGURA, M.D., AND CATHERINE JACOBS, C.N.M.'S OPPOSITION TO THE UNITED STATES' MOTION TO REMAND**<br><br>Hearing Date: January 6, 2025<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10B<br><br>Honorable Mónica R. Almadani<br>United States District Judge |

# TABLE OF CONTENTS


**Page**

INTRODUCTION ........................................................................ 1
FACTUAL AND LEGAL BACKGROUND ........................................... 2
  A. Eisner's Deemed Federal Employment and Immunity .................. 2
  B. Factual and Procedural Background ........................................ 5
LEGAL STANDARDS .................................................................... 7
ARGUMENT ................................................................................ 7
I. Section § 233(*l*)(2) Provides This Court With Jurisdiction ............... 7
  A. The Eisner Defendants Properly Removed Under § 233(*l*)(2) Because The Attorney General Abdicated His Statutory Duties ............... 7
  B. Remand Serves No Purpose Here .............................................. 12
II. The Eisner Defendants Properly Removed Pursuant to 28 U.S.C. § 1442(a)(1) .............................................................................. 13
  A. Removal Was Timely Pursuant to 28 U.S.C. § 1446(b)(3) ............... 13
  B. The Eisner Defendants Are Federal Officers Under § 1442(a)(1) ........ 14
  C. The Eisner Defendants Were Acting Under A Federal Officer Within the Meaning Of § 1442(a)(1) ............................................ 16
CONCLUSION ............................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan*,
986 F.3d 168 (2d Cir. 2021) ... *passim*

*Allen v. Christenberry*,
327 F.3d 1290 (11th Cir. 2003) ... 11

*Arizona v. Manypenny*,
451 U.S. 232 (1981) ... 7

*Babbitt v. Dignity Health*,
2018 WL 6040472 (C.D. Cal. Nov. 19, 2018) ... 11

*Barnes v. Sea Mar Cmty. Health Ctrs.*,
2022 WL 1541927 (W.D. Wash. Apr. 27, 2022) ... 11

*Blumberger v. Tilley*,
115 F.4th 1113 (9th Cir. 2024) ... *passim*

*Campbell v. S. Jersey Med. Ctr.*,
732 F. Appx. 113 (3d Cir. 2018) ... 4, 10

*Colorado v. Symes*,
186 U.S. 510 (1932) ... 17

*City of Greenwood v. Peacock*,
384 U.S. 808 (1966) ... 17

*Doe v. Centerville Clinics Inc.*,
No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2024) ... 11

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ... 7, 17, 20

*Friedenberg v. Lane County*,
68 F.4th 1113 (9th Cir. 2023) ... 16, 20

*Garcia v. Wal-Mart Stores, Inc.*,
207 F.Supp.3d 1114 (C.D. Cal. 2016) ... 13

*Hui v. Castaneda*,
559 U.S. 799 (2010) .......... 4

*In re Joliet-Will Cnty. Cmty. Action Agency*,
847 F.2d 430 (7th Cir. 1988) .......... 19

*Jordan v. Nationstar Mortg.*,
781 F.3d 1178 (9th Cir. 2015) .......... 7

*L.D.Q. v. California Hosp. Med. Ctr.*,
2018 WL 1136568 (C.D. Cal. Mar. 1, 2018) .......... 11

*L.J.C. v. Dignity Health*,
2024 WL 4648147 (C.D. Cal. Oct. 31, 2024) .......... 2, 12

*Ramirez v. Morris*,
No. 2:24-cv-07616 (C.D. Cal.) .......... 10

*Rea v. Michaels Stores Inc.*,
742 F.3d 1234 (9th Cir. 2016) .......... 13

*Sekhar v. United States*,
570 U.S. 729 (2013) .......... 14

*Sherman by & through Sherman v. Sinha*,
843 F. App'x 870 (9th Cir. 2021) .......... 11, 14

*State Farm Mut. Auto. Ins. Co. v. Baasch*,
644 F.2d 94 (2d Cir. 1981) .......... 18

*Watson v. Phillip Morris Cos., Inc.*,
551 U.S. 142 (2007) .......... 15, 17, 19

*Willingham v. Morgan*,
395 U.S. 402 (1969) .......... 15, 17

**Statutes**

28 U.S.C. § 1346(b) .......... 21

28 U.S.C. § 1442(a)(1) .......... *passim*

28 U.S.C. § 1446(b)(3) .......... 12, 13

28 U.S.C. § 1447(d) .......... 18

42 U.S.C. § 233 ........ *passim*

42 U.S.C. § 233(a) ........ *passim*

42 U.S.C. § 233(c) ........ 1, 8, 10

42 U.S.C. § 233(g) ........ 2

42 U.S.C. § 233(g)(1)(A) ........ 2

42 U.S.C. § 233(g)(1)(D) ........ 3

42 U.S.C. § 233(g)(1)(E) ........ 3

42 U.S.C. § 233(g)(1)(F) ........ 3

42 U.S.C. § 233(h) ........ 3, 20

42 U.S.C. § 233(*l*)(1) ........ *passim*

42 U.S.C. § 233(*l*)(2) ........ *passim*

42 U.S.C. § 254b ........ 3

42 U.S.C. § 254b(b)(1) ........ 19

42 U.S.C. § 254b(k)(3) ........ 19, 20

42 U.S.C. § 254b(*l*) ........ 20

42 U.S.C. § 254b(o) ........ 19

Act of Feb. 4, 1815, ch. 31, §§ 6, 8, 3 Stat. 197–98 ........ 15

Act of July 13, 1866, ch. 184, § 67, 14 Stat. 171–72 ........ 15

Act of June 25, 1948, ch. 646, § 1442, 62 Stat. 938 ........ 15

Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, 84 Stat. 1868 (1970) ........ 2

Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501 ........ 2, 5

Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 104-73 ........ 5

**Other Authorities**

H.R. Rep. No. 80-308 (1947) ........................................................................ 15

H.R. Rep. No. 102-823(I) (1992) ................................................................ 16, 18, 19

*Office*, *Black's Law Dictionary* (11th ed. 2019) ................................................ 15

*Officer*, *Black's Law Dictionary* (11th ed. 2019) ................................................ 15

S. Rep. No. 94-29 (1975), *reprinted in* 1975 U.S.C.C.A.N. 469 ............................ 17

S. Rep. No. 107-83 (2001), *reprinted in* 2001 U.S.C.C.A.N. 1033 ........................ 17

## INTRODUCTION

This case is straightforward. The Secretary of the United States Department of Health and Human Services ("HHS") has deemed Defendants Eisner Health, Kendra Segura, M.D., and Catherine Jacobs, C.N.M. (collectively, the "Eisner Defendants") to be employees of the Public Health Services ("PHS") for calendar year 2022. Notice of Deeming Action, Notice of Removal, Ex. 2 (at PDF pp. 121–22), ECF No. 1-2. They possess absolute immunity from any lawsuit arising out of their performance of "medical, surgical . . . or related functions" undertaken within the scope of their deemed PHS employment. 42 U.S.C. § 233(a), (g). Pursuant to 42 U.S.C. § 233(*l*)(1), the Attorney General was therefore required to notify the state court of the Eisner Defendants' deemed PHS status and effectuate the removal of this case to federal court. 42 U.S.C. § 233(*l*)(1); *Blumberger v. Tilley*, 115 F.4th 1113, 1134 (9th Cir. 2024) (if the Attorney General reports that a defendant is deemed to be a PHS employee "removal is necessary").

Notwithstanding these statutory commands and binding Ninth Circuit precedent, the Attorney General failed to perform its non-discretionary duties to advise the state court of the Secretary's favorable deeming determination and remove this action to federal court for a threshold immunity determination. 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1134. Instead, the Attorney General informed the state court (through his designee) that—even if the HHS Secretary had deemed the Eisner Defendants for the relevant period—the United States would not remove the case absent a favorable scope of employment certification by the Attorney General (under § 233(c)). Decl. of Ryan Chapman, Ex. B (Notice to State Court) at ¶ 2, ECF No. 26-3. The Attorney General subsequently informed the Eisner Defendants that he would so certify, nor would he remove the case to federal court. *Id.*, Ex. C.

Even after *Blumberger* squarely rejected the Government's interpretation of its obligations under § 233(*l*)(1), the Attorney General never (a) reported to the state

court that the Eisner Defendants were deemed PHS employees for the relevant period or (b) indicated that he would remove the action on their behalf. Because the Attorney General is adhering to his pre-*Blumberger* position, despite the Ninth Circuit's expectation that he would discharge his obligations under 233(*l*)(1) in "good faith," *Blumberger*, 115 F.4th at 1139, the Eisner Defendants properly removed this case to federal court pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1).

Under *Blumberger*—which is binding precedent (unless and until it is reheard or reversed)—and *Agyin*—which is persuasive authority—there is no doubt this Court has removal jurisdiction to make the threshold immunity determination. Thus, the United States's remand motion should be denied. *See* United States of America's Notice of Mot. and Mot. to Remand ("U.S. Mot."), ECF No. 26; *see also L.J.C. v. Dignity Health*, 2024 WL 4648147, at *4 (C.D. Cal. Oct. 31, 2024).

## FACTUAL AND LEGAL BACKGROUND

### A. Eisner's Deemed Federal Employment and Immunity

Pursuant to the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, 84 Stat. 1868 (1970), codified at 42 U.S.C. § 233(a) *et seq.*, PHS personnel are absolutely immune from any civil action or proceeding arising out of their performance of medical, surgical, dental, or related functions undertaken within the scope of their employment. 42 U.S.C. § 233(a). The statute provides immunity—which is not only a defense against liability but also a right to be free from the cost and burden of litigation altogether—by making the "remedy against the United States" under the Federal Tort Claims Act ("FTCA") "*exclusive of any other civil action or proceeding* . . . ." *Id.* (emphasis added). The Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), as amended in 1995, *codified at* 42 U.S.C. § 233(g) *et seq.*, authorizes the HHS Secretary to extend that "same" immunity to certain "federally-supported" health centers and their officers, directors, employees, and certain contractors. 42 U.S.C. § 233(g)(1)(A) ("The remedy against

the United States for an entity [receiving federal funds under § 254b] shall be exclusive of any other civil action or proceeding to *the same extent as the remedy* against the United States is exclusive pursuant to subsection [233(a)].") (emphasis added).

To be deemed a PHS employee for purposes of § 233(a) immunity, FSHCAA requires health center grantees to apply "in such form and such manner as the Secretary shall prescribe." 42 U.S.C. § 233(g)(1)(D). The health center's application must demonstrate it meets four requirements listed in § 233(h). On receipt of the application, HHS must make a prompt deeming determination. 42 U.S.C. § 233(g)(1)(E). A favorable deeming determination confers "final and binding" federal status on the health center and its personnel for the following calendar year. 42 U.S.C. § 233(g)(1)(D), (F) (making status "final and binding" on HHS, the Attorney General, and "other parties to any civil action or proceeding").

On notification of a state court action against any health center grantee (or its employee, officer, board member, or qualifying contractor), the Attorney General must appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(*l*)(1); *Blumberger*, at 1126–27 ("subsection (*l*)(1) requires the Attorney General to provide positive advice to the state court when the employee was deemed for the time period at issue and the lawsuit arises out of a class or category of medical conduct for which the employee was deemed"). The Attorney General's appearance and report to the state court of the Secretary's deeming determination (as to the period in which the underlying events occurred) satisfies, as a matter of law, "the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity was acting within the scope of their employment or

responsibility." 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1127; *see also id.* at 1134.

If the Attorney General fails to appear and advise the state court as required by § 233(*l*)(1), the deemed PHS employee may remove the matter to the appropriate federal district court, without any time limit for doing so. 42 U.S.C. § 233(*l*)(2). Section 233(*l*)(2) is, in substance and effect, an officer removal statute, which—like 28 U.S.C. § 1442(a)(1)—supplies federal removal jurisdiction. *See Agyin v. Razmzan*, 986 F.3d 168, 178 (2d Cir. 2021).

The statute directs that on removal under § 233(*l*)(2) all proceedings are stayed until the district court conducts a hearing to "determine 'the appropriate forum or procedure'; that is, to decide whether to remand the case or to substitute the United States as a party and deem the action as one brought under the FTCA." *Campbell v. S. Jersey Med. Ctr.*, 732 F. Appx. 113, 116–17 (3d Cir. 2018); *see Hui v. Castaneda*, 559 U.S. 799, 811 (2010) ("immunity is contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, but a defendant may make that proof pursuant to the ordinary rules of evidence and procedure").

Both § 233(*l*)(1) and § 233(*l*)(2) are designed to guarantee the threshold immunity determination occurs in federal court. The provisions, enacted in the 1995 FSHCAA amendments, provide procedural safeguards to benefit deemed defendants in response to the Attorney General's: (1) efforts to second-guess HHS's deeming determinations and (2) failure to timely appear and defend deemed PHS defendants, leaving uncertainty as to the program's promise—*i.e.*, a comprehensive immunity to eliminate the need for private malpractice insurance. *See* H.R. Rep. No. 104-398, at 7 (Attorney General's review of application for coverage after lawsuit is filed "has resulted in delays . . . and at least one default judgment" against a covered health center). The 1995 amendments also significantly restricted the Attorney General's authority by removing the requirement for HHS to have a "consultation with the Attorney General" prior to making a deeming determination; making the Secretary's

prospective deeming decision "final and binding" on the Attorney General, HHS, and all other parties to any civil action or proceeding; imposing a mandatory duty on the Attorney General to appear in state court and advise as to the Secretary's deeming determination; and, making that appearance satisfy § 233(c)'s removal provision. *Compare* FSCHAA of 1992, Pub. L. No. 102-501 *with* FSHCAA of 1995, Pub. L. No. 104-73.

**B. Factual and Procedural Background**

On January 19, 2023, Plaintiffs filed the instant action in California state court. Notice of Removal ¶ 1. The complaint alleges that the Eisner Defendants were negligent in providing medical services to Plaintiff Aguilar during her labor and delivery from January 20 to 23, 2022, and that as a result, she delivered a non-viable child. Notice of Removal, Ex. 1 (Compl.) at ¶¶ 4, 10–15, ECF No. 1-1.

For the period relevant to this action, HHS had deemed Eisner Pediatric and Family Medical Center ("Eisner") and its officers, directors, and employees to be PHS employees for purposes of 42 U.S.C. § 233(a). Notice of Deeming Action, ECF No. 1-2. With respect to the acts and omissions alleged in Plaintiff's complaint, the Eisner Defendants were at all times acting within the scope of their deemed federal employment, performing statutorily required labor and delivery services in their capacity as Eisner employees. 42 U.S.C. § 254b(b)(1) (defining required primary health services as including, *inter alia*, obstetrics, gynecology, and "prenatal and perinatal services"). On or about July 12, 2024, the Attorney General's designee received notice of this lawsuit. Chapman Decl., Ex. A, ECF No. 26-2. The Attorney General was statutorily-obligated to appear within fifteen days of that notice to advise the state court that the Eisner Defendants were deemed to be PHS employees for the time period and category of services at issue in the complaint. *See* 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1130–31. Instead, on July 19, 2023, an Assistant United States Attorney notified the state court that "whether [the Eisner Defendants] are 'deemed' to be 'employee[s] of the Public Health Service' for

purposes of 42 U.S.C. § 233 with respect to the actions or omissions that are the subject of this civil action, is under consideration." *Id.*, Ex. B at ¶ 1. That notice also informed the Court and the Eisner Defendants that "it is anticipated" that the Attorney General would "remove this action to federal court" if, and only if, the Government determined that two conditions were satisfied: (1) the Eisner Defendants were deemed PHS employees for the acts and omissions at issue, and (2) the Eisner Defendants "were acting within the scope of their deemed employment." *Id.* ¶ 2. Nearly nine months later, on April 17, 2024, the Attorney General submitted an "amended notice" asserting (erroneously) that the Eisner Defendants were not deemed to be PHS employees. *Id.*, Ex. D, ECF No. 26-5. Also on April 17, the Attorney General issued a denial decision "stating that the Eisner Defendants were not acting within the scope of their employment." U.S. Mot. at 16 (citing Chapman Decl., Ex. C).

On September 9, 2024, the Ninth Circuit issued its decision in *Blumberger v. Tilley*, 115 F.4th 1113. *Blumberger* involved allegations against an Eisner-employed physician during a period in which Eisner and its employees were deemed to be PHS employees. *Id.* at 1121. There, the Ninth Circuit determined that the Attorney General "was obligated to advise the state court in the affirmative of [the defendant's] deemed status with respect to the relevant actions or omissions," and was further obligated, based on Eisner's deemed PHS employee status, "to remove the case to federal court." *Id.* at 1139. Because the Attorney General had failed to appear, advise, and remove, the *Blumberger* defendant removed the matter himself. *Id.* at 1121. The Ninth Circuit determined that the matter was properly in federal court. *Id.* at 1139–40. On October 9, 2024, pursuant to that decision and in light of the United States' continued failure to remove this matter to federal court, the Eisner Defendant removed the case pursuant to 42 U.S.C. § 233(*l*)(1) and 28 U.S.C. § 1442(a)(1). *See* Notice of Removal. The United States moved to remand on November 5, 2024.

## LEGAL STANDARDS

Under binding Ninth Circuit precedent, courts must apply a strong presumption *in favor* of removal jurisdiction when a party removes a case to federal court pursuant to a federal officer removal statute. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252–53 (9th Cir. 2006) ("[W]e are to interpret section 1442 broadly *in favor of removal*") (emphasis added); *Jordan v. Nationstar Mortg.*, 781 F.3d 1178, 1183 (9th Cir. 2015) (referring to "*Durham* presumption in favor of removal"); *see also Agyin*, 986 F.3d at 175; *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

## ARGUMENT

### I. Section § 233(*l*)(2) Provides This Court With Jurisdiction

#### A. The Eisner Defendants Properly Removed Under § 233(*l*)(2) Because The Attorney General Abdicated His Statutory Duties

Jurisdiction is proper. Pursuant to 42 U.S.C. § 233(*l*)(1), the Attorney General was required, within 15 days of receiving notice of this lawsuit, to advise the state court that the Eisner Defendants are deemed PHS employees. *See* 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1130–31. Had the Attorney General complied with § 233(*l*)(1), that appearance and advice should have resulted in removal. *Blumberger*, 115 F.4th at 1135 (concluding if Attorney General had properly reported Secretary's deeming determination, "Attorney General would have been obligated to remove the case to federal court"). To confirm Eisner's deemed status, the United States needed "only two documents—the deeming notice issued by HHS and the complaint." *Blumberger*, 115 F.4th at 1133. Despite the ease of determining and reporting the Eisner Defendants' deemed status, the Attorney General not only failed to report the fact of Eisner's deemed status within 15 days—instead reporting it was "under consideration"—but also subsequently, and erroneously, informed the state court that the Eisner Defendants were not deemed. *See* Chapman Decl., Exs. B, D. Even after the Ninth Circuit clarified the United States' statutory obligations, the

Attorney General has continued to shirk his duties.

Because here, as in *Blumberger*, the Attorney General abdicated his statutory duty by incorrectly reporting the Eisner Defendants' deemed status was "under consideration" and (subsequently) that the Eisner Defendants were not deemed PHS employees, the Eisner Defendants were wrongfully left in state court, subject to the costs, burdens, and liability against which § 233(a) protects. *Cf. Blumberger*, 115 F.4th at 1139 ("The Attorney General was obligated to advise the state court in the affirmative of [the defendant's] deemed status with respect to the relevant actions or omissions, so it was also obligated to remove the case to federal court"). Fortunately, § 233(*l*)(2) provides deemed PHS employees an alternative route to federal court: "any" deemed PHS defendant may petition for removal without a time limit. *See* 42 U.S.C. § 233(*l*)(2). On such petition, the case "shall be removed to the appropriate United States district court," and "shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum." *Id.*

When read together, 42 U.S.C. § 233(*l*)(1) and (2) lead to one unmistakable conclusion: deemed PHS employees have a right to a federal forum for a determination of their immunity from suit. *See Blumberger*, 115 F.4th at 1140 (holding, when the Attorney General failed to report a defendant's deemed status and that defendant subsequently removed the case to federal court, "the district court should, upon a timely motion to remand, hold a hearing to determine whether 'the case so removed is one in which a remedy by suit within the meaning of subsection (a) . . . is not available against the United States . . . .'") (quoting 42 U.S.C. § 233(c)). The Eisner Defendants removed for just such a determination.

The Government does not dispute—nor can it—that the Attorney General failed to "advise" the state court as required by § 233(*l*)(1). Instead, its remand motion is premised on the argument that—although the Attorney General must "make an appearance in [state] court and advise such court" of the Secretary's prior deeming determination, 42 U.S.C. § 233(*l*)(1)—the Attorney General's

"appearance" alone forecloses removal. U.S. Mot. 6–9. Under the Government's position, § 233(*l*)(2) loses all effect whenever the Attorney General enters any appearance in state court, even if the Attorney General incorrectly represents that a defendant is not a deemed PHS employee. *Id.* The Government's argument is simply a repackaged version of its losing position in *Blumberger*, which the Ninth Circuit rejected because it "would effectively insulate the Attorney General's deeming advice to the state court—and ultimate decision not to certify scope of employment—from judicial review" and leave deemed PHS employees with "no meaningful forum in which to challenge the government's failure to certify scope of employment." *Blumberger*, 115 F.4th at 1135. Following *Blumberger*, as it must, this Court should reject the Government's argument that the Attorney General can bar access to federal court by misrepresenting a defendant's deemed status. *Id.* at 1137 ("[I]f one thing about § 233 is plain, it is that Congress did not plainly commit [the scope of employment] inquiry to the unreviewable judgment of the Attorney General.").

As an alternative argument, the Government suggests that this Court should remand the case—or entirely reject § 233(a) immunity—because the Attorney General received notice of this lawsuit through the Plaintiff rather than the Eisner Defendants. U.S. Mot. at 7 n.3. That argument ignores the plain text of § 233(*l*)(1), which triggers the Attorney General's two-part duty thereunder based on precisely what the government concedes here—*i.e.*, actual notice of a civil action or proceeding against a deemed PHS employee. Section 233(*l*)(1) provides that the Attorney General must appear "after being notified," without regard to the means or source of such notice. *Id*. Accordingly, the Attorney General's duty to appear is not contingent upon whether the *defendant*—who may not be required to provide notice—notifies HHS. Moreover, that the Government had actual notice of this action is reinforced by its filed pleadings in the underlying state action, advancing

its effort to deny the Eisner Defendants' claimed immunity.[1]

Contrary to the Government's assertion, the Eisner Defendants did not remove "simply because [they were] displeased with the statutory timeframe for the Attorney General" to remove. *See* U.S. Mot. at 9. Instead, the Attorney General informed the Eisner Defendants that he did not intend to remove the case. On July 19, 2023, the Government informed the Eisner Defendants that—even if they were deemed PHS employees—it would not remove the case unless it determined they "were acting within the scope of their deemed employment." Chapman Decl., Ex. B at ¶ 2. On April 17, 2024, while *Blumberger* was pending before the Ninth Circuit, the Government informed the Eisner Defendants it had determined they were not acting within the scope of their employment, and that the Government therefore would not remove the case. *Id.*, Ex. C. Even after the Ninth Circuit decided *Blumberger*, the Attorney General failed to correct his prior erroneous notice or provide any indication he had changed his position on removal. Indeed, the Government continues to oppose federal jurisdiction to decide defendants' § 233(a) immunity—instead asserting to the Eisner Defendants and this Court that *Blumberger*, at most, "*arguably* creates a new process for review of the government's coverage determination." *See*, *e.g.*, United States of America's Mot. to Remand at 2, ECF No. 15, *Ramirez v. Morris*, No. 2:24-cv-07616 (C.D. Cal., brief filed Oct. 7, 2024). Therefore, the Eisner Defendants removed this case based on the Attorney General's representation that he would not effectuate removal, as well as the Attorney General's failure to update his notice to state court in compliance with

---

[1] Even if the Eisner Defendants had neglected some notification requirement, they adequately preserved their claim to immunity by raising it "before trial." 42 U.S.C. § 233(c); *cf. id.* § 233(*l*)(2) (imposing no time limit on removal). See *Campbell v. S. Jersey Med. Ctr.*, 732 Fed. Appx. at 116–17 (recognizing § 233(*l*)(2) provides federal removal jurisdiction any time before trial to make a threshold immunity determination).

*Blumberger*.[2] 115 F.4th at 1139 ("Going forward, we trust that the Attorney General will act in good faith to remove cases as expeditiously as possible [ under § 233(*l*)(1)] to avoid unnecessary delay, expense, and uncertainty.").

Further, the Government has unambiguously shown its position has not significantly changed despite *Blumberger*. Every case the Government relies on to argue that § 233(*l*)(2) does not provide the Eisner Defendants with a removal right has been either abrogated, explicitly distinguished, or outright rejected by *Blumberger*. *See* U.S. Mot. at 7–8.[3] As *Blumberger* noted, *Allen* "has little to offer" because it involves "a unique set of circumstances" in which the *Secretary* had not yet issued a deeming determination as to the defendants. *Blumberger*, 115 F.4th at 1132. *Allen* "says nothing about whether the statute contemplates an ex-post deeming decision." *Id.* at 1133. Likewise, *Blumberger* rejected *Doe*, observing that the Third Circuit decision "illustrates the dangers" of the reasoning the Government employs here. *Id.* at 1128–29 (allowing Attorney General's coverage decision, not the Secretary's deeming determination, to control a deemed defendant's access to a federal forum and judicial review). To the extent that other unpublished circuit and district court decisions permit the Attorney General to insulate his own decisions from judicial review, they are abrogated by *Blumberger*. *See id.* at 1135–36 (holding § 233(*l*) permits judicial review). Indeed, the only Court in this District to consider *Blumberger*'s impact so far held, under similar circumstances, "the Court cannot

---

[2] To counsel's knowledge, in the 98 days since *Blumberger* issued, the Attorney General has not filed a single notice complying with *Blumberger* (either as a corrected notice or a first notice in a case) or removed a case on behalf of a deemed PHS employee in the Ninth Circuit.

[3] Citing *Allen v. Christenberry*, 327 F.3d 1290 (11th Cir. 2003); *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2024); *L.D.Q. v. California Hosp. Med. Ctr.*, 2018 WL 1136568 (C.D. Cal. Mar. 1, 2018) *Babbitt v. Dignity Health*, 2018 WL 6040472 (C.D. Cal. Nov. 19, 2018); *Sherman by & through Sherman v. Sinha*, 843 F. App'x 870, 873 (9th Cir. 2021); and *Barnes v. Sea Mar Cmty. Health Ctrs.*, 2022 WL 1541927 (W.D. Wash. Apr. 27, 2022).

grant . . . the Government's motion[] to remand, given that the case needed to be removed—specifically by the Government—months ago." *L.J.C.*, 2024 WL 4648147, at *4.

It is true that *Blumberger* did not "consider whether [the defendant's] removal under § 233(*l*)(2) was improper" or "whether the Attorney General's . . . notice to the state court was so inadequate that we should consider the notice a failure to appear for purposes of § 233(*l*)(2)." *Blumberger*, 115 F.4th at 1140. The Court did not need to reach those questions in light of its other conclusions—the same conclusions the Government asks the Court to disregard here. Because the Attorney General "should have provided affirmative advice to the state court . . . within 15 days of receiving notice of the suit" but failed to do so and also failed to remove the case, the Court found that the "[a]ppropriate [r]emedy" was that the case remain in federal court for the district court to make an immunity determination. *Id.* at 1139–40. Accordingly, the Court did not need to determine whether removal was proper under § 233(*l*)(2)—the case would already remain in federal court to remedy the Attorney General's statutory violations. The remedy should be no different here. Moreover, the Ninth Circuit declined to reach the § 233(*l*)(2) issue because it "trust[ed] that the Attorney General will act in good faith to remove cases as expeditiously as possible to avoid unnecessary delay, expense, and uncertainty." *Id.* at 1139. If the Attorney General complies with § 233(*l*)(1) and removes a case to federal court, a deemed PHS employee need not rely on § 233(*l*)(2).

B. Remand Serves No Purpose Here

In addition to its other legal flaws, the Government's remand motion asks this Court to engage in a pointless exercise. Because the Eisner Defendants were indisputably deemed with respect to Plaintiffs' allegations, the Attorney General is required to remove this case from state court to federal court. *See Blumberger*, 115 F.4th at 1139. Consequently, if the Court grants the Government's remand motion, the Government will simply be required to re-remove this case back to this Court.

No purpose is served by shuttling this case back and forth between state and federal court. Remand will simply require the parties, United States, this Court, and state court to expend unnecessary time and resources. Rather than remanding this case so the Government can re-remove and ask the Court to conduct a hearing on § 233(a) immunity, this Court should simply retain its jurisdiction (and conduct that same immunity hearing). Remand is particularly inappropriate here because the Government has already issued its decision asserting the Eisner Defendants were not acting within the scope of their deemed PHS employment. Chapman Decl., Ex. C. Presumably, the Government can currently defend that decision.[4]

## II. The Eisner Defendants Properly Removed Pursuant To 28 U.S.C. § 1442(a)(1)

### A. Removal Was Timely Pursuant to 28 U.S.C. § 1446(b)(3)

The Eisner Defendants' removal was timely because they removed within thirty days of the Ninth Circuit's decision and order in *Blumberger*, which made it clear that they were entitled to a federal forum in which to assert their immunity defense. Pursuant to 28 U.S.C. § 1446(b)(3), removal is timely if it occurs "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an . . . order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). As the Ninth Circuit has recognized, removal is timely if it occurs within thirty days of a binding decision that clarifies a defendant's removal rights. *See Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1237–38 (9th Cir. 2016); *Garcia v. Wal-Mart Stores, Inc.*, 207 F.Supp.3d 1114, 1126 n.12 (C.D. Cal. 2016) (citing *Rea* for proposition that "removal was proper outside the [original] 30-day window when a change in law" meant that

[4] The Government also asserts that, if the Court denies this motion, it should stay all further proceedings and order the parties "to brief the issue of whether the Eisner Defendants' alleged actions were within the scope of their deemed federal employment with the PHS." U.S. Mot. at 15–16. The Eisner Defendants agree.

previously-remanded case now satisfied removal requirements).

In *Blumberger*, the Ninth Circuit clarified that federal jurisdiction under § 233(*l*) extends to nearly every "deemed" PHS employee defendant. *See Blumberger*, 115 F.4th at 1130–31 ("A defendant satisfies [§ 233(*l*)(1)'s] requirements [for removal] if he was deemed for the relevant time period and was providing services for which § 233 would supply immunity . . . Full-and part-time employees . . . are generally covered for all 'medical, surgical, dental, or related functions'"). A defendant's deemed PHS employee status—"a prospective decision made by the Secretary of HHS" in advance of litigation—creates federal jurisdiction to assess the availability of § 233(a) immunity even if the Attorney General advises that a defendant acted outside the scope of their employment (and thus is not "covered" by § 233(a) immunity). *Id.* at 1134. The United States' ultimate coverage decision, based on an assessment of scope of employment, impacts entitlement to immunity only—it does not impact the jurisdiction of the federal courts. As the cases cited by the Government illustrate, the Ninth Circuit and district courts previously misread § 233, conflating the HHS Secretary's "deeming" determination and the Attorney General's "coverage" decision, holding that the Attorney General was not required to "definitively advise the court of whether [a defendant] was considered a federal officer" under § 233(*l*)(1). *See*, *e.g.*, U.S. Mot. at 7–8 (citing *Sherman*, 843 F. App'x at 873). Consequently, the *Blumberger* decision constitutes a change in law that clarified the applicability of the Eisner Defendants' federal employee status.

B. <u>The Eisner Defendants Are Federal Officers Under § 1442(a)(1)</u>

As deemed PHS employees for purposes of an absolute federal immunity, the Eisner Defendants qualify as federal officers under § 1442(a)(1). The federal officer removal statute affords a right of removal to "any officer . . . of the United States or of an agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). Because the statute does not define "officer," the term should be given its "well settled meaning." *Sekhar v. United States*, 570

U.S. 729, 732 (2013). The ordinary meaning of "officer" is varied and broad. *See Officer*, *Black's Law Dictionary* (11th ed. 2019) (defining "officer" as "[s]omeone who holds an office of trust, authority, or command. In public affairs, the term refers esp. to a person holding public office under a national, state, or local government, and authorized by that government to exercise some specific function"). The term "office," on which the meaning of "officer" necessarily turns, is equally broad. *See Office*, *Black's Law Dictionary* ("A position of duty, trust, or authority, esp. one conferred by a governmental authority for a public purpose").

The context, purpose, and history of the statute indicate that "officer," as employed in § 1442(a)(1), encompasses all federal employees—*i.e.*, all individuals holding a position of duty, trust, or authority conveyed to them by a governmental authority for a public purpose. *Cf. id.* The current federal officer removal statute is rooted in a series of early statutes enacted to protect federal officials from prosecution by state authorities hostile to the federal laws those officials enforced. *See Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 147–48 (2007); *Willingham v. Morgan*, 395 U.S. 402, 405–06 (1969) (recounting history of federal officer removal statutes). These early precursor statutes authorized removal by only certain types of federal officers. *See* Act of Feb. 4, 1815, ch. 31, §§ 6, 8, 3 Stat. 197–98 (authorizing removal by federal customs officers and "any other person aiding or assisting" such officers); Act of July 13, 1866, ch. 184, § 67, 14 Stat. 171–72 (removal of suit against revenue officer "on account of any act done under color of his officer," or "any person acting under or by authority of any such officer"). In 1948, Congress expanded this right to include all federal employees. *See* Act of June 25, 1948, ch. 646, § 1442, 62 Stat. 938. Legislative history shows that "officer" in § 1442 "appl[ies] to all . . . *employees* of the United States or any agency thereof." H.R. Rep. No. 80-308, at A134 (1947) (emphasis added).

Here, the Secretary's deeming determination, memorialized in a Notice of Deeming Action covering calendar year 2022, affords Eisner and its employees the

same right to absolute immunity under § 233(a) as that available to "any commissioned officer or employee" of the PHS. 42 U.S.C. § 233(a), (g)(1)(A) (affording "the same" immunity to deemed PHS employees); *Friedenberg v. Lane County*, 68 F.4th 1113, 1127 (9th Cir. 2023) ("Congress intended for deemed PHS employees to receive protection 'in the same manner' as traditional PHS employees during the coverage period"); *Agyin*, 986 F.3d at 177. It is hardly a stretch for deemed PHS employees—who perform functions equivalent to actual PHS employees and enjoy the same federal immunity with respect to such functions—to be treated as federal employees entitled to remove actions against them to federal court under § 1442(a)(1).

The history of FSHCAA and the health center program further illustrates that FSHCAA's purpose is to treat health center personnel as federal employees for purposes of § 233(a) immunity. When considering FSHCAA, Congress noted that historically more than one-half of health center staff were in the National Health Service Corps ("NHSC") program. H.R. Rep. No. 102-823(I) (1992), at 5. Thus, until 1983, the majority of health center staff were PHS employees. *See id*. Part of Congress's motivation for enacting FSHCAA was to address increased costs incurred during the nine-year period when the majority of health center staff *were not* PHS employees. *See* H.R. Rep. No. 102-823(I), at 5 ("the NHSC-assigned physicians lost their FTCA coverage, thus making malpractice costs a larger problem for the centers"). FSHCAA thus restored and extended the pre-existing FTCA protection by allowing health centers' employees to be deemed federal employees.

### C. The Eisner Defendants Were Acting Under A Federal Officer Within The Meaning Of § 1442(a)(1)

Even if the Eisner Defendants are not recognized as federal employees for purposes of § 1442(a)(1), they qualify as persons "acting under [a federal] officer." § 1442(a)(1). A private entity acts under a federal officer when it acts on behalf of a federal officer under delegated authority, or "assist[s]" or "help[s] carry out" the

official "duties or tasks of the federal superior." *Watson*, 551 U.S, at 152 (emphasis omitted). A defendant seeking removal as "a person acting under" a federal officer must establish: (1) it is a person within the meaning of the statute, (2) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiffs' claims, and (3) it has raised a colorable federal defense. *Durham*, 445 F.3d at 1251.

The removal right affords a federal forum to ascertain the availability of a federal defense to lawsuits arising from the performance of official duties. *See City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966). The words "acting under" in § 1442(a)(1) are broad. *Colorado v. Symes*, 186 U.S. 510, 517 (1932); *accord Willingham*, 395 U.S. at 407 (purpose of removal statute "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)").

In *Agyin v. Razmzan*, the Second Circuit concluded that a deemed PHS defendant physician acted under a federal officer for purposes of § 1442(a)(1) removal. *Id.* at 178. In so concluding, the Second Circuit noted that health centers are "subject to detailed requirements and oversight by the federal government" sufficient to create the requisite special relationship. *Id.* at 177. Like the defendant in *Agyin*, the Eisner Defendants assist HHS in fulfilling the national objective of providing healthcare to underserved communities—and thus were "acting under" a federal officer with respect to the conduct alleged in Plaintiffs' complaint. Examining FSHCAA's legislative history, the Second Circuit correctly determined that deemed PHS employees perform "a job that—in the absence of [FSHCAA] and its provision for deeming health centers and their staffs to be federal employees—the federal government would have had to perform itself." *Agyin*, 986 F.3d at 176 (citing H.R. Rep. No. 104-398, at 5). Namely, deemed PHS employees assist and help "carry out the duties of the federal government to provide medical care to the

indigent." *Id.*[5]

There is no merit to the Government's assertion that § 1442(a)(1) removal is improper because Eisner and its employees "do not help fulfill basic governmental tasks." U.S. Mot. at 13. The Eisner Defendants perform services that "in the absence" of federal funding, the federal government itself previously provided through its own employees. Prior to and during the first few years of the health center grant program, federal employees (through the NHSC) performed the same tasks the Eisner Defendants now perform. More than that, federal employees comprised the majority of health centers' physician staff. H.R. Rep. No. 102-823(I), at 5. Indeed, until 1983, the federal government deployed federal PHS employees (through NHSC) to health centers to provide the same services in the same communities that these health centers serve today. *See id.* Eisner, like the health center employer in *Agyin*, received federal grant funding to provide medical care to a federally designated population; received a Notice of Deeming Action from HHS for all relevant periods; and operated subject to extensive federal requirements, oversight, and involvement.

The Attorney General asserts the Eisner Defendants did not act under a federal officer because, in his estimation, "neither Eisner nor its employees have agency-like or 'unusually close' relationships with the government, nor do they act under federal government 'subjection, guidance, or control." U.S. Mot. at 12 (quoting

---

[5] The Government also contends that reliance on the Second Circuit's decision in *Agyin* is misplaced because "[t]he only issue the court needed to address was whether the case had been '*removed pursuant to* section 1442'" and thus that "[a]ny remaining analysis was dicta." U.S. Mot. at 15. Under binding Second Circuit precedent at the time *Agyin* was decided, 28 U.S.C. § 1447(d) only permitted an appellate court to review the portions of a remand order pertaining to § 1442 or § 1443. *State Farm Mut. Auto. Ins. Co. v. Baasch*, 644 F.2d 94, 97 (2d Cir. 1981). *See id.* Therefore, the *Agyin* court properly—and necessarily—assessed whether the defendants had *properly* removed the case pursuant to § 1442(a)(1) as federal officers or individuals acting under federal officers, not just whether removal triggered appellate jurisdiction.

*Watson*, 551 U.S. at 151, 153). The Government's mischaracterizes the relationship.

First, Congress enacted FSHCAA, in part, precisely *because* "there is *close Federal supervision of the centers themselves* in the form of clinical guidelines, funding, and operational conditions, and quality assurance requirements." H.R. Rep. No. 102-823(I), at 5. HHS provides health center grants to fulfill the "national objective" of providing "high quality health services to all American communities." S. Rep. No. 94-29, at 119 (1975), *reprinted in* 1975 U.S.C.C.A.N. 469, 581; *see also* S. Rep. No. 107-83, at 2 (2001); *reprinted in* 2001 U.S.C.C.A.N. 1033, 1034 (noting "critical" need for "committee to act to reauthorize and improve programs [including the Health Centers program] that make it possible for millions of Americans to access a health care safety net"). Second, Eisner does have an "agency-like relationship" with HHS. The relationship between Eisner and a federal officer—namely the HHS Secretary, who has largely delegated authority to the Health Resources and Services Administration (HRSA) under 42 U.S.C. § 254b(o)—is marked by a high degree of control and agency involvement. *Cf. In re Joliet-Will Cnty. Cmty. Action Agency*, 847 F.2d 430, 432 (7th Cir. 1988) ("nature of the grantor-grantee relationship is such as to constitute the grantee in effect an agent to carry out specified tasks").

The federal government dictates where a health center can exist, who the center must treat, the treatment and services its personnel must provide (e.g., obstetrical and gynecological services), the manner in which the center can charge for its services, how the center must collect payment and from whom, how it must manage its finances and accounts, the relationships the center has with contractors, and even the relationship the center must maintain with other area providers. *See*, *e.g.*, 42 U.S.C. § 254b(b)(1) (listing required healthcare services), (b)(3) (authorizing HHS to designate geographic areas in which health centers may operate), (e)(5)(D) (mandating that all revenue generated by grant-supported activities be spent in furtherance of the grant project), (k)(2)(C) (authorizing HHS Secretary to require

assurance that grantee provide "any health service . . . the Secretary finds is needed to meet specific health needs of the area to be served"), (k)(3)(B) ("make every reasonable effort to establish and maintain collaborative relationships with other health care providers"); (k)(3)(D) (must demonstrate financial responsibility "by the use of such accounting procedures and other requirements as may be prescribed by the Secretary"); (k)(3)(G) (must charge on income-adjusted basis and treat all patients regardless of ability to pay). The relationship is also collaborative—the statute requires HHS to provide "technical" and other "nonfinancial assistance" to health center grantees to assist them in meeting program requirements. *Id.* § 254b(*l*).

The Government claims that the Eisner Defendants' position would "convert *all* health centers to federal employees" for purposes of § 1442 regardless of whether the health centers were deemed federal employees. U.S. Mot. at 12. First, Eisner and its employees must satisfy additional requirements to be deemed federal employees. 42 U.S.C. § 233(h). Second, absent the Secretary's deeming determination granting immunity under § 233(a), health centers would lack a federal defense—a requirement for § 1442 removal. *See Durham*, 445 F.3d at 1251; *Agyin*, 986 F.3d at 177 (deemed PHS employees "receive[] from the federal government a delegation of the same legal immunity that is extended to employees of the Public Health Service").

Finally, the Government asserts the Eisner Defendants do not face "'a significant risk of state court prejudice'"—and thus cannot remove pursuant to § 1442(a)(1)—because, if the Attorney General decides that § 233 immunity does not apply and that determination is correct, the case is governed by state law. U.S. Mot. at 14. Contrary to the Government's assertions, this factor also supports the availability of § 1442 removal. The availability of federal immunity is the central issue in this case. The Attorney General's legal interpretations are certainly not infallible, as the Ninth Circuit and other courts have recognized. *See, e.g.*, *Friedenberg*, 68 F.4th at 1120 n.2, 1130; *Agyin*, 986 F.3d at 184–85, 187. If the

United States is the proper defendant, the state court lacks jurisdiction over Plaintiffs' claims against the Eisner Defendants. *See* 28 U.S.C. § 1346(b). As *Blumberger* recognized "[a] state-court hearing [on § 233 immunity' is unavailing for several reasons" and might "be at odds with federalism and supremacy principles." *Blumberger*, 115 F.4th at 1138. Indeed, in this case, the state court already concluded it lacked authority to certify whether the Eisner Defendants were acting within the scope of their deemed federal employment. ECF No. 1 at 184–92 (Nov. 15, 2023 Order).

**CONCLUSION**

For the foregoing reasons, the Court should deny the United States's Motion to Remand.

Dated: December 16, 2024

Respectfully submitted,

KELLY, TROTTER & FRANZEN

John C. Kelly (SBN 125609)
Kristina A. Hoban (SBN 280023)
111 West Ocean Boulevard, 14th Floor
Post Office Box 22636
Long Beach, California 90801-5636
Tel: 562.432.5855
jckelly@kellytrotter.com
kahoban@kellytrotter.com

FELDESMAN LEIFER LLP

/s/ *Brendan M. Tyler*
Brendan M. Tyler*
Matthew S. Freedus*
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
Tel: 202.466.8960
mfreedus@feldesman.com
btyler@feldesman.com

*Admitted *pro hac vice*

*Counsel for Defendants EISNER HEALTH, KENDRA SEGURA, M.D., and CATHERINE JACOBS, C.N.M.*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for the Eisner Defendants certifies that this brief contains 6,995 words—excluding the caption, the table of contents, the table of authorities, the signature block, certificate of compliance, and attachments—which complies with the word limit of Local Rule 11-6.1.

Undersigned counsel also certifies that this brief uses 14-point Times New Roman font in compliance with Local Rule 11-3.1.1.

/s/ *Brendan M. Tyler*
Brendan M. Tyler (admitted *pro hac vice*)

*Counsel for Defendants EISNER HEALTH, KENDRA SEGURA, M.D., and CATHERINE JACOBS, C.N.M.*