BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
RYAN C. CHAPMAN (Cal. Bar No. 318595)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2471
Facsimile: (213) 894-7819
E-mail: Ryan.Chapman@usdoj.gov

Attorneys for Movant
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

VERONICA PAZ AGUILAR et al.,

Plaintiffs,

v.

CATHERINE L. JACOBS et al.,

Defendants.

No. 2:24-cv-08715 MRA (MARx)

**THE UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 42 U.S.C. § 233(c); MEMORANDUM OF POINTS AND AUTHORITIES**

*[Declaration of Ryan C. Chapman and [Proposed] Order filed concurrently herewith]*

Hearing Date: July 28, 2025
Hearing Time: 1:30 p.m.
Ctrm: 10B

Honorable Mónica Ramírez Almadani
United States District Judge

# TABLE OF CONTENTS

DESCRIPTION — PAGE

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. STATUTORY AND REGULATORY FRAMEWORK .......... 2

III. FACTUAL AND PROCEDURAL BACKGROUND .......... 5

A. Aguilar is admitted to the Hospital for antepartum testing. She is discharged home and delivers a stillborn baby a few days later. .......... 5

B. The Eisner Defendants treated Aguilar pursuant to a contract in which Eisner runs the Hospital's OB/GYN Department on the Hospital's behalf. .......... 5

C. Eisner's deemed status and relevant procedural history .......... 8

IV. LEGAL STANDARD .......... 9

V. ARGUMENT .......... 10

A. Whether the conduct at issue falls within FSHCAA's limits is a threshold issue. .......... 10

B. The United States is not responsible for Eisner's contracting work on behalf of a third party. .......... 11

1. The care at issue was provided on behalf of a third party. .......... 11

2. The care at issue was provided to the Hospital's patients, who were inherently *not* health center patients at the time of treatment. .......... 14

VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**FEDERAL CASES**

*Blumberger v. Tilley*,
115 F.4th 1113 (9th Cir. 2024) ........ 4

*Bray v. Bon Secours Mercy Health, Inc.*,
97 F.4th 403 (6th Cir. 2024) ........ 14

*Cromer v. Dignity Health*,
2025 WL 1153808 (C.D. Cal. Apr. 18, 2025) ........ 12, 13

*Dedrick v. Youngblood*,
200 F.3d 744 (11th Cir. 2000) ........ 12

*Duncan v. Stuetzle*,
76 F.3d 1480 (9th Cir. 1996) ........ 9

*FDIC v. Craft*,
157 F.3d 697 (9th Cir. 1998) ........ 9

*Friedenberg v. Lane County*,
68 F.4th 1113 (9th Cir. 2023) ........ 14, 15

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) ........ 9

*Green v. Hall*,
8 F.3d 695 (9th Cir. 1993) ........ 9

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
761 F.3d 1027 (9th Cir. 2014) ........ 9

*Henderson v. Bluemink*,
511 F.2d 399 (D.C. Cir. 1974) ........ 3

*Kelley v. Richford Health Ctr., Inc.*,
115 F.4th 132 (2d Cir. 2024) ........ 14

*O'Brien v. United States*,
56 F.4th 139 (1st Cir. 2022)....4, 10, 12

*Pediatric & Fam. Med. Found. v. U.S. Dep't of Health & Hum. Servs.*,
2017 WL 8220596 (C.D. Cal. July 6, 2017)....4

*Samish Indian Nation v. United States*,
90 Fed. Cl. 122 (2009)....2

*Shirk v. U.S. ex rel. Dep't of Interior*,
773 F.3d 999 (9th Cir. 2014)....10, 11

*Sturgeon v. Frost*,
587 U.S. 28 (2019)....4

*Thomas v. Phoebe Putney Health System, Inc.*,
2019 WL 6039976 (M.D. Ga. March 6, 2019)....14

**FEDERAL STATUTES**

28 U.S.C. § 2679(b)(1) (1988)....3

28 U.S.C. § 1346....1

28 U.S.C. § 2402....4

28 U.S.C. § 2671....1

28 U.S.C. § 2674....4

28 U.S.C. § 2675....4

28 U.S.C. § 2678....4

28 U.S.C. § 2680....4

42 U.S.C. § 233(a)....2, 3, 11

42 U.S.C. § 233(c)....v, 9

42 U.S.C. § 233(g)....iv

42 U.S.C. § 233(g)(1)(A) ........ 1, 4

42 U.S.C. § 233(g)(1)(B) ........ 10, 14, 15

42 U.S.C. § 233(g)(1)(B)-(C) ........ 4, 14

42 U.S.C. § 233(g)(1)(D) ........ 3, 11

42 U.S.C. § 233(g)(5) ........ 12

42 U.S.C. § 233(g)-(n) ........ 1, 3

42 U.S.C. § 254b ........ 1, 3, 8

42 U.S.C. § 254b(e)(1)(A) ........ 2

42 U.S.C. § 256b(a)(1) ........ 3

42 U.S.C. § 1395m(o) ........ 3

42 U.S.C. § 1395x(aa)(4)(A)(i) ........ 3

Pub. Law No. 104-73, §§ 2-11 ........ 3

**FEDERAL REGULATIONS**

42 C.F.R. § 6.6(c) ........ 11, 12, 15

42 C.F.R. § 6.6(d) ........ 11, 14, 15

42 C.F.R. § 6.6(e) ........ 11, 12, 15

42 C.F.R. § 6.6(e)(4) ........ 11, 12, 13

42 C.F.R. § 6.6(e)(4)(ii) ........ 12, 13

42 C.F.R. § 6.6(e)(4)(iii) ........ 13

**OTHER AUTHORITIES**

116 Cong. Rec. 42 ........ 3

1992 U.S.C.C.A.N. 2627 .......... 2

HRSA, PIN No. 2008-01, at 2 .......... 3

Health Res. & Servs. Admin., HHS, *Federal Tort Claims Act: Health Center Policy Manual* 21–22 .......... 8

**NOTICE OF MOTION AND MOTION TO REMAND**

PLEASE TAKE NOTICE that, on July 28, 2025 at 1:30 p.m., as soon thereafter as they may be heard, the United States of America will, and hereby does, move this Court for an order remanding this case to California Superior Court pursuant to 42 U.S.C § 233(c). This motion will be made in the First Street Federal Courthouse before the Honorable Mónica Ramírez Almadani, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

The United States brings the motion on the ground that Defendants Catherine Jacobs, CNM; Kendra Segura, MD; and Eisner Health were not acting as deemed federal employees at the time of the events of this action under 42 U.S.C. § 233(g).

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on April 29, 2025.

Dated: May 23, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney

Attorneys for Movant
United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs filed this medical malpractice lawsuit alleging claims arising from the stillbirth of Veronica Aguilar's child at California Hospital Medical Center ("the Hospital"). Among other medical providers, Ms. Aguilar was treated at the Hospital by Defendants Catherine Jacobs, Certified Nurse Midwife ("CNM") and Kendra Segura, MD, who were employees of Defendant Eisner Health (collectively "the Eisner Defendants") who provided medical care to Ms. Aguilar while she was an inpatient at the Hospital. The Eisner Defendants provided this care at the Hospital pursuant to a contract in which Eisner has agreed to staff the Hospital's OB/GYN Department as the Hospital's contractor. Under the contract, Eisner's employees treat the Hospital's patients, act as members of the Hospital's medical staff, document their work in the Hospital's systems, and follows all the Hospital's rules, procedures, and bylaws. The Eisner Defendants seek to have the United States substituted in their place, as though the United States were responsible for the care they provided on the Hospital's behalf.

Eisner is a private community health center that receives a federal grant from the Department of Health and Human Services ("HHS") under 42 U.S.C. § 254b. As an optional add-on to this grant program, Eisner was eligible for HHS assistance with the cost of medical malpractice insurance under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n). If Eisner is sued and the alleged conduct is something the United States has agreed to be responsible for under FSHCAA, then the lawsuit would proceed against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq.*

Under FSHCAA, a health center and its employees are treated as Public Health Service ("PHS") employees for the limited purpose of § 233. A health center may be "deemed" in advance to be a PHS employee for the calendar year under § 233(g)(1)(A) and, after being sued, asks the federal government to defend the lawsuit. But a "deemed" health center is not a PHS employee for all claims or all events—FSHCAA

and the governing regulations limit a health center's deemed employment to certain situations. For that reason, once a lawsuit is filed, the Attorney General determines whether the specific alleged conduct falls within those situations and if it is appropriate for the United States to substitute in as the defendant.

Here, Eisner took it upon itself to contract with the Hospital—a third party that is not eligible under FSHCAA—and fulfill the Hospital's duty to treat the Hospital's patients. The Eisner Defendants were acting on behalf of a third party in a situation beyond the statutory and regulatory limits of § 233(g). FSHCAA does not compel the United States to defend a health center that takes on outside employment on behalf of other third-party employers, such as the Hospital. Accordingly, the Eisner Defendants were not acting as deemed PHS employees for the purposes of this lawsuit and remand to California Superior Court is required.

## II. STATUTORY AND REGULATORY FRAMEWORK

Under the Public Health Service Act ("PHSA"), the exclusive remedy for medical malpractice committed by PHS employees acting within the scope of their employment is a tort action against the United States under the FTCA. *See* 42 U.S.C. § 233(a).

The federal government provides grants to health centers to defray "the costs of the operation of public and nonprofit private health centers that provide health services to medically underserved populations." 42 U.S.C. § 254b(e)(1)(A).[1] Before 1992, health centers used their own funds, including grant money, to purchase medical malpractice insurance. H.R. Rep. 102-823, at 5 (1992), *reprinted in* 1992 U.S.C.C.A.N. 2627. To help preserve grant money for patient care, Congress passed FSHCAA. *See id.* at 6 ("Extending FTCA coverage to grantees . . . will enable them to redirect funds

---

[1] A federal grant is "financial assistance authorized by federal law to support autonomous programs of states or local governments or groups, which the federal government does not dictate but does wish to encourage. . . . Grants are characterized by a 'maximum of autonomy in the program essentials, coupled with a necessary minimum of fiscal control to assure integrity.'" *See Samish Indian Nation v. United States*, 90 Fed. Cl. 122, 131 (2009) (citations omitted), *aff'd in part, rev'd on other grounds*, 657 F.2d 1330 (Fed. Cir. 2011), *cert. granted, judgment vacated in part*, 568 U.S. 936 (2012).

now spent on medical malpractice insurance premiums[.]"). This act was grafted onto the PHSA.[2] Subject to statutory conditions, FSHCAA extends the FTCA's protections to health centers that apply. H.R. Rep. 102-823, at 4-6 (1992). Following a three-year demonstration period, Congress amended FSHCAA to clarify the scope of malpractice protections afforded under the statute and to make FSHCAA's malpractice protections optional for qualifying grantees. *See* Pub. Law No. 104-73, §§ 2-11, *codified as amended at* 42 U.S.C. § 233(g)-(n).

When a health center takes the optional step of applying for FTCA protections in a lawsuit, there are three separate decisions that must occur. First, an entity applies for and receives a grant from HHS under 42 U.S.C. § 254b to assist the entity in providing health care to underserved populations. *See* HRSA, PIN No. 2008-01, at 2, https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pin-2008-01-project-scope.pdf (last visited May 19, 2025) (describing the "scope of project" that comprises a health center's activity supported by the federal grant).[3] Second, the grant-recipient health center must separately submit a "deeming application," to the Secretary of HHS. *See id.* § 233(g)(1)(D). If approved, the entity and its employees are "deemed" to be employees of the Public Health Service for the upcoming calendar year "[f]or purposes of" Section

---

[2] The Surgeon General asked Congress to enact this statutory immunity because PHS officers and employees could not afford medical malpractice insurance, and the risk that federal common-law official immunity afforded no protection against medical malpractice claims. 116 Cong. Rec. 42,543 (1970); *see* H.R. Rep. No. 91-935, at 3, 91st Cong., 2d sess. (March 23, 1970) (recommending private bill to compensate a PHS physician for settling a malpractice claim due to the risk that any official immunity defense would be reversed on appeal); *see also Henderson v. Bluemink*, 511 F.2d 399, 402–03 (D.C. Cir. 1974) (rejecting official immunity defense for physicians charged with malpractice). FSHCAA, by "deeming" qualifying entities and individuals to be PHS employees only for "purpose of [section 233]" incorporates only the immunity afforded under 42 U.S.C. § 233(a), not the broader immunity conferred under the later-enacted Westfall Act, 28 U.S.C. § 2679(b)(1) (1988).

[3] An approved grant project also allows a health center to participate in other federal programs, such as the 340B Drug Pricing Program, 42 U.S.C. § 256b(a)(1), (4)(A), and Medicare reimbursement payments, 42 U.S.C. §§ 1395m(o), 1395x(aa)(4)(A)(i).

233. *Id.* § 233(g)(1)(A).[4] This yearly deeming action is binding upon HHS, the Attorney General, and any parties to a civil proceeding. *Id.* § 233(g)(1)(F).

Third, when a health center is sued, it must tender the claim to the government, at which time the Attorney General decides whether the lawsuit's allegations fall within the health center's "deemed" federal employment. *See Blumberger v. Tilley*, 115 F.4th 1113, 1128 (9th Cir. 2024); *Pediatric & Fam. Med. Found. v. U.S. Dep't of Health & Hum. Servs.*, 2017 WL 8220596, at *5, *7 (C.D. Cal. July 6, 2017) (recognizing that the Attorney General makes the determination as to FTCA coverage). That is because the Secretary's deeming decision does not establish coverage for a particular lawsuit. As discussed further below, deemed employment with the PHS is limited by FSHCAA's statutory and regulatory text and the government must make a case-specific determination regarding whether FTCA coverage is available for a particular suit. *See, e.g.*, 42 U.S.C. § 233(g)(1)(B)-(C); *O'Brien v. United States*, 56 F.4th 139, 148-49 (1st Cir. 2022) ("We hasten to add that the Secretary's annual 'deeming' determination does not conclusively establish PHSA and FTCA coverage with respect to a particular lawsuit . . . . Rather, coverage hinges on the circumstances in which care has been provided.").

If the Attorney General determines that FTCA coverage is appropriate, the United States effects its substitution in place of the health center defendant. The case then proceeds against the United States, with plaintiffs limited to the constraints of the FTCA, such as administrative exhaustion, no punitive damages, no jury trial, restrictions on attorney's fees, no pre-judgment interest, and subject to the FTCA's numerous unique defenses. 28 U.S.C. §§ 2402, 2674, 2675, 2678, 2680.

[4] As the Supreme Court has explained, the word "deemed" is utilized in statutes for the limited purpose of establishing a "useful" "legal fiction." *Sturgeon v. Frost*, 587 U.S. 28, 47 (2019). Thus, "deemed" health centers are provided the same immunity applicable to PHS employees, but only within the confines of § 233 and to the extent the alleged conduct is within the scope of the deeming.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. Aguilar is admitted to the Hospital for antepartum testing. She is discharged home and delivers a stillborn baby a few days later.

According to the Complaint, Ms. Aguilar presented to the Hospital on January 20, 2022, for treatment relating to her pregnancy. Compl. ¶ 13. She alleged that Defendants negligently discharged her from the Hospital without completing appropriate testing and without urgently delivering her baby on that date. *Id.* Ms. Aguilar delivered a stillborn child three days later. *Id.*

Ms. Aguilar's medical records from the January 20 visit reflect that she had a prenatal visit at Eisner's clinic and was sent to the hospital for antepartum testing. Declaration of Ryan C. Chapman ("Chapman Decl.") ¶ 3 & Ex. A at 1. At the Hospital, she was admitted as an inpatient and Segura was the Hospital attending physician. *Id.* Ex. A. at 9. Ms. Aguilar was triaged at the Hospital by Jacobs, who assessed her and documented the inpatient progress note. *Id.* Ex. A at 1–4. Ms. Aguilar was discharged from the Hospital with instructions to keep her next clinic prenatal appointment. *Id.* Ex. A at 3–4.

### B. The Eisner Defendants treated Aguilar pursuant to a contract in which Eisner runs the Hospital's OB/GYN Department on the Hospital's behalf.

In 2007, Eisner entered into an independent contractor agreement with the Hospital governing the employment of Eisner physicians and CNMs at the Hospital. ECF No. 1-2 at 144–71. This contract was revised in 2012 and 2022, with the 2012 version in effect in January 2022. Chapman Decl. ¶ 4 & Ex. B.[5] Under the contract, Eisner's employees worked at the Hospital's OB/GYN Department and provided

[5] Eisner previously provided the 2012 contract to the United States through its counsel in a prior matter. Chapman Decl. ¶ 4. The 2022 contract that Eisner provided to the state court in this action went into effect on November 15, 2022—ten months after the allegations at issue—and noted that it was superseding the 2012 contract. ECF No. 1-2 at 28. Accordingly, the 2012 contract was in effect at the time of the incidents alleged in the Complaint.

treatment to the Hospital's patients. *Id.* Ex. B at 4 (§ 2.1). The contract designates Eisner as an independent contractor working for the Hospital "in the performance of [Eisner's] obligations under this Agreement." *Id.* Ex. B at 10 (§ 4.2(a)). Eisner specifically entered into the contract to support the Hospital and fulfill the Hospital's requirement to provide "treatment of patients who present to the [OB/GYN] Department or are inpatients of Hospital in need of OB/GYN services." *Id.* Ex. B at 3 (Recital C); *accord id.* (Recital D: contract entered into "[i]n order to ensure adequate and continued coverage for Patients" of the Hospital).

The contract makes clear that the individuals treated at the Hospital were considered to be Hospital patients. The patients treated under the contract were all patients who presented to the Hospital for treatment. *Id.* Ex. B at 4 (§ 2.1). All patient records were done on the Hospital's system, in accordance with the Hospital's rules, and remained the Hospital's property. *Id.* Ex. B at 6 (§ 2.6). The contract specified that Eisner's employees were expected to provide "obstetrics and gynecology services" to Hospital patients, as well as report to the Hospital's medical staff. *Id.* Ex. B at 4, 9 (§§ 2.1, 3.7). This included ensuring that Eisner employees were at the Hospital to provide care "24 hours per day, 7 days per week, 365 days per year." *Id.* Ex. B at 4 (§ 2.1); *accord id.* Ex. B at 5 (§ 2.2(a)).

The contract also reflects that Eisner was to provide employees who would be working on the Hospital's behalf. Eisner's employees working under the contract were part of the Hospital's medical staff and were expected to comply with "the bylaws, rules and regulations of the Medical Staff" for the Hospital, among other requirements. *Id.* Ex. B at 8, 9 (§§ 2.10, 3.4). Eisner's employees also had to comply with the Hospital's "corporate integrity program," which encompassed "corporate integrity-related seminars and educational programs sponsored by the Hospital." *Id.* Ex. B at 7 (§ 2.8(b)). Further, the contract specified that the Hospital's "OB/GYN Training Program" would be run by a Medical Director who was an Eisner employee. *Id.* Ex. B at 5–6 (§ 2.4). The Medical Director had twenty-two separate responsibilities that largely related to "day-to-day

supervision" and administrative work at the Hospital. *Id.* Ex. B at 30–31 (contract Exhibit 2.4).

Eisner also took on additional responsibilities for the Hospital under the contract beyond treating the Hospital's patients. The contract required Eisner to operate the Hospital's residency program, in which the Hospital trained new doctors. *Id.* Ex. B at 32–34 (contract Exhibit 2.5). Eisner was required to designate a "Supervising Physician" who was "responsible for the day-to-day supervision and direct and indirect oversight of medical residents providing services at Hospital." *Id.* Ex. B at 33 (contract Exhibit 2.5 § 2(d)(1)). Each of Eisner's employees was responsible for supervising, teaching, and evaluating the Hospital's residents in accordance with the Hospital's agreements with outside residency programs. *Id.* (contract Exhibit 2.5 § 2(d)(2)-(4)).

The contract specified that the Eisner employees fulfilling Eisner's responsibilities under the contract would not be employees who were otherwise providing coverage at any other facility. Instead, Eisner was expected to specifically "employ or otherwise engage [Eisner] Professionals to furnish Coverage Services under this Agreement." *Id.* Ex. B at 5 (§ 2.3(a)). Those employees could not be on call "to any other hospital or health care facility" at the same time they were working on the Hospital's behalf. *Id.* (§ 2.2(d)).[6] Eisner has acknowledged that Segura and Jacobs were staffing the Hospital pursuant to the Contract. *See* ECF No. 1-2 at 10–11 (Eisner Defendants' representation to the state court in a motion).

In exchange for running the Hospital's OB/GYN Department, Eisner did not seek admitting privileges for its employees or the right to refer Eisner patients to the Hospital—indeed, the contract disavows the idea that it "contemplates or requires the admission or referral of any patients." Chapman Decl. Ex. B at 10 (§ 4.2(a)). Instead, in addition to any professional fees for its employees' services in treating Hospital patients,

[6] The 2022 revised contract elaborates further on this point, stating that those Eisner employees staffing the Hospital were expected to "dedicate substantially *all of their respective professional efforts* as Eisner Professionals to the provision of services at Hospital." ECF No. 1-2 at 30 (§ 2.4(a)) (emphasis added).

Eisner received a flat payment from the Hospital for staffing the Hospital. *Id.* Ex. B at 14, 42 (§ 5.1(a); § 5.2(a); contract Exhibit 5.1(a)). In 2019, this amounted to $1,022,000 per year, with a bonus of up to $200,000 if Eisner's employees met certain performance metrics issued by the hospital. *Id.* Ex. C at 2 (contract Amended Exhibit 5.1(a)).

Finally, the contract stated that Eisner would maintain a policy of professional liability insurance with specific policy limits that would "provide coverage for negligent acts or omissions of [Eisner] and each [Eisner] Professional in the performance of professional services." *Id.* Ex. B at 11 (§ 4.3(a)).

**C. Eisner's deemed status and relevant procedural history**

At the time of the allegations in this action, Eisner was the recipient of a federal grant under 42 U.S.C. § 254b and Eisner had applied for and was approved as a deemed employee of the PHS for 2022. ECF No. 1-2 at 121 (Eisner's Notice of Deeming for 2022). The Hospital is operated by Dignity Health and is a separate entity that is *not* a grant-recipient entity and is *not* eligible to be a deemed PHS employee.

Plaintiffs filed this action in California Superior Court on January 19, 2023. ECF No. 1-1. Eisner was served with the summons and complaint on March 29, 2023, and Segura was served on March 22, 2023. ECF No. 1 at 21–26. While the state court docket does not reflect when Jacobs was served, the Eisner Defendants collectively, including Jacobs, filed a motion for certification and substitution of the United States in state court on July 5, 2023. ECF No. 1-2. On July 19, the Attorney General appeared in state court to advise the court that the Eisner Defendants' asserted status as deemed federal employees for the purposes of this lawsuit was under consideration. ECF No. 26-3. On November 15, 2023, the state court denied the Eisner Defendants' motion. ECF No. 1 at 184–92.

During this time, the government conducted an investigation into whether the Eisner Defendants were deemed employees for the purpose of this lawsuit. *See* Health Res. & Servs. Admin., HHS, *Federal Tort Claims Act: Health Center Policy Manual* 21–22, https://bphc.hrsa.gov/sites/default/files/bphc/technical-assistance/ftcahc-policy-

manual.pdf (noting minimally required documentation a health center must provide to HHS upon request) (last updated July 21, 2014). On April 17, 2024, the United States Attorney's Office sent a letter to the Eisner Defendants' counsel explaining that their request for FTCA coverage was denied. ECF No. 26-4. That same day, the United States filed an amended notice in state court, stating the same. ECF No. 26-5. Six months later, on October 9, 2024, the Eisner Defendants removed this action to federal court. ECF No. 1.

## IV. LEGAL STANDARD

Federal courts have long recognized that removal should be "strictly construed" and that a "defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

Whether this action is properly in federal court ultimately turns on whether the United States is the proper defendant under the FTCA. *See* 42 U.S.C. § 233(c). Accordingly, the Court must also consider the limited nature of the FTCA's waiver of sovereign immunity. *See FDIC v. Craft*, 157 F.3d 697, 707 (9th Cir. 1998) ("The FTCA's waiver of sovereign immunity is strictly construed in favor of the sovereign, and we may not enlarge its waiver beyond what the statute requires.").

In cases where the Attorney General has declined to certify a party as acting within the scope of federal employment, the party seeking to undo that decision has the burden of proof. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993).

## V. ARGUMENT

### A. Whether the conduct at issue falls within FSHCAA's limits is a threshold issue.

This action is not properly in federal court because the Eisner Defendants were not acting as deemed PHS employees during the alleged events at issue in this lawsuit. To be sure, the United States does not dispute that Eisner and its employees were deemed to be PHS employees for the calendar year and for limited purposes. But, as noted above, the calendar year deeming does not establish immunity for the specific acts or omissions at issue in a lawsuit. *See O'Brien*, 56 F.4th at 148–49.

When the federal government deems a private actor to be a federal employee eligible for FTCA protections subject to specific limitations, the threshold issue is to determine whether the lawsuit's allegations encompass that actor's deemed employment with the federal government or the actor's private sector conduct with their employer. *See Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1005–06 (9th Cir. 2014). In other words, when the United States has agreed to only be responsible for certain services or claims, the first issue is to determine if the lawsuit encompasses what the United States intended to cover. Thus, for example, where a tribal contractor's deemed status was limited to "carrying out" federal contracts, the court had to apply that federal limitation and "determine whether the alleged activity is, in fact, encompassed by the relevant federal contract." *Id.* If the alleged actions are within the federal limits on the deeming, the "relevant 'employment'" is the deemed federal employment, and a court then moves on to determine if the deemed employee was acting within the scope of that employment under state law. *Id.* at 1006–07.

FSHCAA contains federal law limitations on a health center's deemed status that limit the situations in which the United States will consider a health center to be acting within the scope of such status. First, deemed status only applies "with respect to services provided" "to all patients of the entity" and, subject to additional limitations, to certain "individuals who are not patients of the entity." 42 U.S.C. § 233(g)(1)(B).

Federal regulations further clarify what services performed by a health center employee fall within the health center's deemed status. The deeming does not apply to "services which are not on behalf of the covered entity," such as medical care provided "on behalf of a third-party." 42 C.F.R. § 6.6(c). The health center employee's actions must also be "related to the grant-supported activity" of the health center. *Id.* § 6.6(d).

The regulations contain specific examples of situations in which a health center's deeming will apply to care provided on behalf of third parties, on a volunteer basis, or to non-health center patients. *Id.* § 6.6(e). If the health center's "activity or arrangement" with a third-party "fits squarely within these descriptions" then the deemed status applies. *Id.* § 6.6(e)(4). If the health center's activity *does not* squarely fit within the regulation's examples, the health center must seek a separate "particularized determination" from HHS to determine if it is deemed with respect to the services at issue. *Id.*; *accord* 42 U.S.C. § 233(g)(1)(D) (HHS requires an application for deeming to apply to these services "in such form and such manner as the Secretary shall prescribe").

Finally, a health center's deeming only applies to lawsuits that result from "the performance of medical, surgical, dental, or related functions," the same as for any PHS employee under this section. 42 U.S.C. § 233(a). If all these requirements are met, then the court turns to the question of "whether the allegedly tortious action falls within the scope of the tortfeasor's employment under state law." *See Shirk*, 773 F.3d at 1008. While this *is* a medical malpractice action and Eisner does assert that Segura and Jacobs were acting within the scope of their employment with Eisner, the United States asserts that the conduct at issue was on behalf of a third-party and for Eisner's own compensation. ECF No. 26-4 (April 17, 2024 letter to Eisner's counsel).

**B. The United States is not responsible for Eisner's contracting work on behalf of a third party.**

1. <u>The care at issue was provided on behalf of a third party.</u>

The complaint's allegations are not covered conduct under FSHCAA because the Eisner Defendants were staffing the Hospital's OB/GYN Department as contractors on

the Hospital's behalf. Work performed as a contractor is inherently "work for . . . another." *Contractor*, Black's Law Dictionary (12th Ed. 2024). Accordingly, Segura and Jacobs were performing work and providing care for *the Hospital*. Indeed, FSHCAA only contemplates covering contractor work performed on the health center's behalf. *See* 42 U.S.C. § 233(g)(5). Because substitution of the United States under FSHCAA constitutes a waiver of sovereign immunity under the FTCA, the statute must be "strictly construe[d]" against expanding sovereign immunity to other forms of contractor work. *See Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000).

The regulations interpreting FSHCAA also confirm that this care is not within Eisner's deeming. Here, Segura and Jacobs provided services "on behalf of a third-party," and any medical treatment "related to such services [is] not covered." 42 C.F.R. § 6.6(c). But there are pre-approved exceptions wherein care provided on behalf of a third party or to a nonpatient of the health center *might* be covered, such as if "[p]eriodic hospital call or hospital emergency room coverage" is a required condition "for obtaining hospital admitting privileges" and the health center has documented this as a required condition of employment with its physicians. *Id.* § 6.6(e)(4)(ii).

As noted above, these exceptions are explicitly listed in the federal regulations. *Id.* § 6.6(e). The regulations further require that if a health center's "activity or arrangement" does not "fit[] squarely within these descriptions," the health center must "seek a particularized determination of coverage" before any such activity can be covered. *Id.* § 6.6(e)(4); *see also O'Brien*, 56 F.4th at 149.

"Here, the arrangement between Defendant Eisner Health and California Hospital"—under which Segura and Jacobs treated Ms. Aguilar—"bears little resemblance to the example provided in the federal regulations." *Cromer v. Dignity Health*, 2025 WL 1153808, at *11 (C.D. Cal. Apr. 18, 2025) (holding that a particularized determination was required for the 2022 contract between Eisner and the Hospital and granting the United States' remand motion). Eisner's employees working under the contract work in the Hospital's in-patient OB/GYN department year-round,

treat the Hospital's patients, train the Hospital's doctors, are subject to the Hospital's rules and regulations, and even carry out the Hospital's agreements with other third-parties (*i.e.*, the Hospital's residency programs). Indeed, Segura's involvement appears to be from her role as the admitting and attending physician at the Hospital and Jacobs' involvement is as the provider who examined Ms. Aguilar after her admission to the Hospital. Chapman Decl. Ex. A at 1–4, 9. The Eisner Defendants were not working at the Hospital as a "condition for obtaining hospital privileges" or as part of an agreement "for after-hours coverage of [Eisner's] patients"—agreements that would squarely fit within the pre-approved exceptions in 42 C.F.R. § 6.6(e)(4)(ii) & (iii)—but were instead fulfilling the Hospital's need to treat the Hospital's patients under a contract that disavowed any connection to the referral or admission of Eisner's patients. *See id.* Ex. B at 13 (§ 4.2(a)).

Accordingly, the contract "demonstrates that Defendant Eisner Health was staffing California Hospital for the benefit of California Hospital and *its* patients," with the result being "that the care provided to patients under this agreement by Eisner Professionals is more aptly considered services provided on behalf of California Hospital, a third party, rather than on behalf of Defendant Eisner Health, the deemed entity." *Cromer*, 2025 WL 1153808, at *10. Eisner's "arrangement" with the hospital required a particularized determination from HHS under 42 C.F.R. § 6.6(e)(4) for any care pursuant to the arrangement to be covered. Indeed, Eisner has been advised *multiple* times that a particularized determination is required and Eisner has willfully chosen not to seek one. ECF No. 26-4 at 2–3.

Thus, Eisner's choice to take on the Hospital's responsibilities as the Hospital's contractor falls outside of its federally limited deemed status. The purpose of deemed status is to "free up more resources" for health centers to treat their patients. H.R. Rep. 102-823, at 3; *accord FTCA: Health Center Policy Manual* 4 ("The intent of the Health Center FTCA Medical Malpractice Program is to increase the availability of funds to health centers to provide primary health care services."). Deeming was never intended

to subsidize a health center's business arrangement with a third-party. *Compare Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 413–16 (6th Cir. 2024) (contract for health center doctor to provide periodic, weekend on-call coverage at a hospital squarely fit within regulation's example), *with Thomas v. Phoebe Putney Health System, Inc.*, 2019 WL 6039976, at *4–*5 (M.D. Ga. March 6, 2019) (health center's contract for employee to provide 24/7 coverage at a hospital was not an arrangement that "squarely fits" into regulation's examples). Accordingly, the Attorney General correctly determined that Eisner's deemed status does not extend to Segura's and Jacobs' actions under the contract and FTCA coverage is not appropriate.

2. <u>The care at issue was provided to the Hospital's patients, who were inherently *not* health center patients at the time of treatment.</u>

In addition to the Eisner Defendants' contractor work being on behalf of a third party, the Eisner Defendants were also not acting as deemed employees because Plaintiff was a Hospital patient at the time of care. *See* 42 U.S.C. § 233(g)(1)(B); 42 C.F.R. § 6.6(d). The deeming does not apply to treatment of nonpatients unless the Secretary determines in advance that the treatment satisfies statutory conditions and will be covered. *Id.* § 233(g)(1)(B)-(C); s*ee Friedenberg v. Lane County*, 68 F.4th 1113, 1126 (9th Cir. 2023) (claim "must result from the performance of" services to a health center patient); *Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132, 140 (2d Cir. 2024) (among other limits, FSHCAA "ties an entity's deemed federal employment to the patient/nonpatient status of the individual receiving treatment"). Indeed, it is not enough that the providers at issue be employed by a health center if the care at issue was not provided to a health center patient. *Kelley*, 115 F.4th at 140–41.

While Plaintiff's medical record indicates that she received prenatal care at Eisner, Chapman Decl. Ex. A at 1, the contract creates a separate line of business for Eisner wherein Eisner's employees treat a Hospital patient, regardless of where that patient may have received any prior medical care. Indeed, the contract disavows the idea that Eisner and the Hospital have agreed to refer Eisner's patients to the Hospital. *See id.* Ex. B at

10 (§ 4.2(a)). Instead, the Eisner Defendants were treating the Hospital's OB/GYN patients, some of whom *might* have had prenatal care at an Eisner facility. Thus, all care under the contract, regardless of whether a patient was previously treated by Eisner, lacks the required causal connection between the care and a "patient[] of the entity" under § 233(g)(1)(B), such that the care would "result from" treatment of a health center patient. *See Friedenberg*, 68 F.4th at 1126. Accordingly, the fact that Segura and Jacobs were treating a Hospital patient at the time of care required a prior particularized determination for FTCA protections to apply. *See* 42 C.F.R. § 6.6(d) & (e).[7]

## VI. CONCLUSION

For the foregoing reasons, the Eisner Defendants' removal of this action was improper and the United States asks that the Court remand this action to the Superior Court for the County of Los Angeles.

[7] To be sure, the Court can uphold the Attorney General's decision based solely on the fact that the Eisner Defendants were working on the Hospital's behalf. 42 C.F.R. § 6.6(c) & (d) contain several requirements for healthcare services to be covered by the FTCA; for example, services must be "within the scope" of employment, "related to" "grant-supported activity," and must not be provided "on a volunteer basis." The Ninth Circuit has recognized that § 6.6's regulatory requirements foreclose FTCA protection "even if the other requirements for immunity under § 233 have been met." *Friedenberg*, 68 F.4th at 1130–31. The requirements that the care must not be provided "on behalf of a third-party" and must be to "patients of a [health center]" are separate requirements—the absence of which requires a particularized determination. 42 C.F.R. § 6.6(c) & (d).

Dated: May 23, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney

Attorneys for Movant
United States of America

**L.R. 11-6.1 Certification**

The undersigned counsel of record for the United States certifies that this brief contains 5,327 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 23, 2025

/s/ *Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney