UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-08715-MRA-MAR | Date | November 5, 2025 |
| Title | *Veronica Paz Aguilar, et al. v. Catherine L. Jacobs, et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| Melissa Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING THE UNITED STATES' MOTION TO REMAND [40]**

Before the Court is the United States' Motion to Remand (the "Motion"). ECF 40. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **DENIES** the Motion.

I. **BACKGROUND**

Plaintiffs Veronica Paz Aguilar ("Paz Aguilar") and Ernesto Zepeda Cordoba (collectively, "Plaintiffs") filed this medical malpractice suit arising from the stillbirth of their child at California Hospital Medical Center ("CHMC"). ECF 1-1 (Compl.). On April 23, 2025, the Court issued an Order denying the United States' prior Motion to Remand, staying this action, and ordering the parties to file within 30 days any motion to remand on the basis that Defendants Eisner Health ("Eisner"), Kendra Segura, M.D., and Catherine Jacobs, CNM (collectively, "Eisner Defendants") were not acting within the scope of their employment at the time of the incident underlying this case. ECF 39. The Court incorporates by reference the factual background and procedural history set forth in its April 23, 2025, Order. *Id*.

On May 23, 2025, the United States (the "government") filed the instant Motion. ECF 40. Plaintiffs filed a Notice of Non-Opposition. ECF 45. On August 11, 2025, Eisner Defendants filed an Opposition. ECF 46. On August 25, 2025, the government filed a Reply. ECF 47. On August 28, 2025, Defendants filed a Notice of Decision, advising the Court of the August 27, 2025, decision in *A.H., et al. v. Ahmad Khalifa, M.D., et al.* (*A.H.*), No. 2:22-cv-07148-DSF-PVC (C.D. Cal.). ECF 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:24-cv-08715-MRA-MAR | Date | November 5, 2025 |
|---|---|---|---|
| Title | *Veronica Paz Aguilar, et al. v. Catherine L. Jacobs, et al.* | | |

## II. DISCUSSION

Under the Federally Supported Health Centers Assistance Act ("FSHCAA"), federally funded health centers and their employees can be "deemed" federal employees of the Public Health Service ("PHS") for the purpose of malpractice liability. 42 U.S.C. § 233(g). "The immunity for deemed PHS employees is identical to the immunity for true PHS employees." *Blumberger v. Tilley*, 115 F.4th 1113, 1117 (9th Cir. 2025) (citing 42 U.S.C. § 233(g)(1)(A)). When a deemed community health center or its employees are sued for actions taken within the scope of their employment, "the United States is similarly substituted as the defendant and the action proceeds as an FTCA suit." *Id.* (citing 42 U.S.C. § 233(a), (g)(1)(A)). However, the health center and its employees' deemed status applies only in specific cases where the services were provided to either a patient of the deemed entity or to non-patients in certain circumstances after approval by the Secretary of Health and Human Services. 42 U.S.C. § 233(g)(1)(B).

The government argues that Eisner Defendants provided Plaintiffs with inpatient care at CHMC pursuant to a contract with CHMC, not within the scope of their employment as deemed PHS employees, and that the FSHCAA therefore does not compel the United States to defend Eisner in this suit. ECF 40 at 9. Eisner Defendants respond that they are immune from suit because Paz Aguilar was a preexisting Eisner patient who received prenatal care at Eisner facilities approved by the Department of Health and Human Services ("HHS") and that their provision of perinatal care, albeit at CHMC, was in furtherance of Eisner's HHS-approved federal project. ECF 46 at 6-7.

There is no dispute that Eisner is a private community health center that had been deemed a PHS employee for purposes of 42 U.S.C. § 233 at the time of the allegations. ECF 46-1 (Freedus Decl.) ¶ 6, Ex. E. In 2007, Eisner entered into a contract with CHMC governing the employment of Eisner employees at CHMC. *Id.* ¶ 3, Ex. B (Eisner-CHMC Agreement). Under the contract, Eisner's employees were required to staff a 24/7 OB/GYN call panel and ensure that an additional physician or certified nurse-midwife ("CNM") was on call at all times. Eisner-CHMC Agreement § 2.1. Eisner is designated as an independent contractor with respect to CHMC "in the performance of its obligations under this Agreement." *Id.* § 4.1(a). The contract does not require the admission or referral of any patients, and the parties did not intend for the agreement to influence the judgment of Eisner's employees in referring patients to CHMC. *Id.* § 4.2(a). Eisner was required to maintain continuous malpractice insurance coverage in accordance with the terms of the agreement. *Id.* § 4.3(a), (c). In March 2007, Eisner requested that HHS expand the approved scope of its federally funded project to increase outpatient women's health services at Eisner's main clinic, and to add CHMC as a service site at which Eisner personnel would staff a 24-hour, seven-days-per week OB/GYN call panel, thus

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-08715-MRA-MAR | Date | November 5, 2025 |
|---|---|---|---|
| Title | *Veronica Paz Aguilar, et al. v. Catherine L. Jacobs, et al.* | | |

"completing the continuum of maternity care" in Eisner's service area. Freedus Decl. ¶ 2, Ex. A. HHS approved Eisner's request in February 2008, adding CHMC as an HHS-approved service site and high-risk prenatal care and prenatal care as new services. *See id.* ¶ 4, Ex. C.

The government does not appear to dispute that Paz Aguilar was a preexisting Eisner patient at the time she received care at CHMC. *See* ECF 40 at 12. Indeed, Paz Aguilar's medical records reflect that she had a prenatal visit at Eisner's clinic and was then sent to CHMC for antepartum testing. Chapman Decl. ¶ 3, Ex. A (Paz Aguilar Medical Records) at 1. At CHMC, she was admitted inpatient and triaged by Defendant Jacobs, who assessed her and documented the inpatient progress note. Paz Aguilar Medical Records at 1-4. Paz Aguilar was then discharged from CHMC with instructions to keep her next prenatal appointment at the Eisner clinic. *Id.* at 3-4.

The Court agrees with Eisner Defendants that based on the facts presented, where, as here, Plaintiffs are patients of the health center, "coverage is straightforward: the Secretary's 'deeming' determination 'appl[ies] with respect to services provided" to 'all patients of the entity.'" *O'Brien v. United States*, 56 F.4th 139, 149 (1st Cir. 2022) (quoting 42 U.S.C. § 233(g)(1)(B)-(C)). The government's argument to the contrary—that Eisner Defendants were providing care to CHMC's patient on behalf of CHMC, not to Eisner's own patient as part of Eisner's federally funded project—rests on an erroneous assumption that preexisting Eisner patients are no longer Eisner patients when they receive continuing inpatient care at CHMC.

As an initial matter, the contract between Eisner and CHMC is silent on whether patients admitted to CHMC are considered Eisner patients, CHMC patients, or both. However, the contract specifies that care under the contract would include "all labor, delivery and other services provided through the [OB/GYN] Department to [Eisner] patients." Eisner-CHMC Agreement § 2.1. In other words, Eisner and CHMC contemplated that preexisting Eisner patients, like Paz Aguilar, would be admitted for OB/GYN continuing care, and that those patients would be treated by Eisner employees. The government points to section 4.2 of the agreement, the referral provision, to assert that "the contract disavows the idea that Eisner and the Hospital have agreed to refer Eisner's patients to the Hospital." ECF 40 at 21. Not so. That provision only disavows any contractual expectation or requirement that Eisner would refer or admit its patients to CHMC over other health care delivery sites. It does not speak to the continuity of care for Eisner patients who are referred to CHMC and admitted for inpatient services.

The Court finds persuasive the district court's decision in *A.H.* and adopts its reasoning in full. The facts in that case are practically identical to circumstances presented here. In *A.H.*, the plaintiffs filed a medical malpractice suit against Eisner for the allegedly negligent delivery of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-08715-MRA-MAR | Date | November 5, 2025 |
|---|---|---|---|
| Title | *Veronica Paz Aguilar, et al. v. Catherine L. Jacobs, et al.* | | |

newborn, A.H., at CHMC. *A.H. v. Khalifa*, 2025 WL 2472476, at *1 (C.D. Cal. Aug. 27, 2025). There, as here, the plaintiffs were preexisting prenatal OB/GYN patients of Eisner in its outpatient clinic. *Id.* In *A.H.* and here, the government made the same argument:

> Eisner's contract with the Hospital creates a separate line of business for Eisner wherein Eisner's employees are treating Hospital patients, regardless of where any prior medical care may have occurred. Indeed, the contract disavows any connection to the referral of Eisner's patients to the Hospital. Instead, the Hospital-based Eisner employees are treating the Hospital's OB/GYN patients, some of whom *might* have had prenatal care at an Eisner facility. Thus, all care under the contract, regardless of any prior treatment by Eisner, lacks the required causal connection between the care and a "patient[ ] of the entity" under § 233(g)(1)(B)(i), such that the care would "result from" treatment of a health center patient.

*Id.*; ECF 40 at 21.

In *A.H.*, the court held that the government's position is "either conclusory or rests on a strained, selective reading of the contract between Eisner and the Hospital" and that the government "fail[ed] to substantiate its (implicit) view that a patient can only be a patient of *either* the Hospital or Eisner but not both at the same time." 2025 WL 2472476, at *2. The court reasoned that "[e]ven if the contract with the Hospital allows/requires Eisner to provide care to Hospital patients who are not otherwise Eisner's patients, the government fails to explain why that fact somehow 'un-patients' preexisting Eisner patients when they are admitted to the Hospital for continuation of care previously received at Eisner outpatient facilities." *Id.* The court also noted that the government's argument is inconsistent with HHS's Federal Tort Claims Act Health Center Policy Manual, which explicitly acknowledges that "[t]he provision of local inpatient hospital care to a covered entity's patients is considered part of the continuity of care of the patient and is covered by FTCA if the service provided at the local hospital is within the covered entity's scope of project and the covered individual's scope of employment." *Id.* (citing FTCA Manual at 11). The court therefore concluded that even if the services at issue "partially satisfied Eisner's obligations under the contract with the Hospital," "the government fail[ed] to point to anything in § 233 that suggests that services otherwise covered by § 233(a) are not covered if those services also in some sense provide an ancillary benefit to a third-party." *Id.* at *3.

The government also contends that 42 C.F.R. § 6.6, the regulation interpreting FSHCAA, confirms that the care at issue in this case is not within Eisner's deeming. ECF 40 at 19. The Court disagrees and, like the *A.H.* court, finds that the government "conflates different provisions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-08715-MRA-MAR | Date | November 5, 2025 |
|---|---|---|---|
| Title | *Veronica Paz Aguilar, et al. v. Catherine L. Jacobs, et al.* | | |

of that regulation." *A.H.*, 2025 WL 2472476, at *3. Subsection (c) provides that "covered individuals" must be acting "within the scope of their employment" to be covered. 42 U.S.C. § 6.6(c). As explained above, the provision of local inpatient hospital care to a covered entity's patients is considered within the covered individual's scope of employment. Thus, "[t]he actual question is whether *Eisner* was acting within the scope of its grant when [its employees] provided the services." *A.H.*, 2025 WL 2472476, at *3. In that respect, subsection (d) provides that "[o]nly acts and omissions related to the grant-supported activity of entities are covered" and that acts "related to services provided to individuals *who are not patients of a covered entity* will be covered" only if HHS makes a determination that an exception applies. *Id.* § 6.6(d) (emphasis added). In other words, the question remains whether Paz Aguilar was a patient of Eisner at the time of the allegations. The Court concludes that she was Eisner's patient because the services provided at CHMC were for continuing care within Eisner's scope of project.

Lastly, the government's reliance on the district court's decision in *Cromer v. Dignity Health*, No. 2:24-cv-04731-WLH-SK, 2025 WL 1153808 (C.D. Cal. Apr. 18, 2025), is misplaced. *See* ECF 40 at 19-20. In *Cromer*, the decedent had been receiving prenatal care at another deemed community health center before presenting to CHMC for a scheduled cesarean section. 2025 WL 1153808, at *1. Notwithstanding that the decedent was not a pre-existing Eisner patient, Eisner had implicitly argued that FTCA coverage was required because the decedent had been a patient of *a* deemed entity. *Id.* at *9. The court disagreed, explaining that "[t]he question is not whether the individual was a patient of *any* deemed health center; but whether the patient was a patient of *the* deemed entity whose deemed physician provided care." *Id.* The court concluded that the "[d]ecedent was not a patient of [Eisner], which is the dispositive question," *id.*, and went on to find that "the specific arrangement between [Eisner] and [CHMC] lends additional support for the conclusion that Decedent cannot be considered a patient of [Eisner]," *id.* at *10. Because the court determined the decedent's treatment was "more aptly characterized as treatment of a nonpatient . . . and on behalf of a third party, California Hospital," the court concluded Eisner was required to seek a particularized determination of coverage from HHS. *Id.* Here, because Paz Aguilar was a pre-existing Eisner patient who received a continuation of that care at CHMC, she was an Eisner patient and Eisner Defendants were acting within the scope of their employment.

//

//

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:24-cv-08715-MRA-MAR | Date | November 5, 2025 |
|---|---|---|---|
| Title | *Veronica Paz Aguilar, et al. v. Catherine L. Jacobs, et al.* | | |

### III. **CONCLUSION**

For the foregoing reasons, the Motion to Remand is **DENIED**. The United States is substituted as the defendant in place of Eisner Defendants pursuant to 42 U.S.C. § 233.

**IT IS SO ORDERED.**

Initials of Deputy Clerk    mku